GREEN FRANKLIN, APPELLANT, VS. THOMAS R. AYER, APPELLEE.

1. It is an established rule of equity that parol evidence will be admitted to show that a deed absolute on its face was intended by the parties as a mortgage. Facts discussed and the transaction held to be a mortgage.

2. The existence or non-existence of a debt held to be a distinguishing test as to whether a transaction is a conditional sale or a mortgage. Evidence considered and held that a debt existed between the parties.

3. Courts of equity will, in pursuance of a wise and benign rule, in cases of doubt as to whether the parties intended the transaction as a mortgage or conditional sale, hold it to be a mortgage.

4. When the mortgagor, though after the time it was due, tenders to the mortgagee the amount of the debt secured by said mortgage and the interest thereon up to date of the tender, at the rate agreed on, and the mortgagee refuses to receive it for the alleged reason that he had sold the mortgaged property to a third party, an act which he no authority to do, and the mortgagor deposits the sum with the Clerk of the Circuit Court of the county in which the land is situated for the use of the mortgagee, and takes his receipt and files his bill to redeem, and recites therein that he had deposited such sum in the custody of the Clerk of the Court for defendant's use, and appends to such bill the receipt of the clerk as an exhibit : *Held*, That it was a legal and valid tender—that the bill substantially alleged all the facts necessary to show that it was a good tender—that the mortgagee was not entitled to recover interest on his debt after the date of the tender, and that upon sustaining the allegations of his bill in the court below the mortgagor was entitled to recover costs against the mortgagee.

Appeal from the Circuit Court for Marion county.

The decree rendered in the Circuit Court was that the complainant pay to the defendant $795.45 with interest thereon at twenty-five per cent. per annum until paid, and do also pay the costs of suit, and that the deed in question

from complainant to defendant be held void, and that thereupon defendant convey to complainant all his interest in the land in question. From this decree both parties appealed. The other facts are stated in the opinion.

*Hodge, Bullock & Burford* for Appellant.

*J. J. & S. Y. Finley* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court :

Franklin filed his bill in the Circuit Court of Marion county against Thomas R. Ayer, in which he alleges the following facts : that he was the owner of an 80 acre tract of land in said county ; that he was indebted to E. W. Agnew & Co. in about the sum of four hundred dollars; that he gave to said A. & Co. an absolute deed to his land as a security for the payment of his indebtedness to them ; that said deed was treated and considered by said A. & Co. and himself as a mortgage ; that said A. & Co. were pressing him for the payment of the debt, which he was unable to meet ; that he applied to Thomas R. Ayer for a loan of money to discharge said debt; that said Ayer made the loan with other sums amounting in the aggregate to $795.-45, and your orator on the 13th June, A. D. 1884, executed and delivered to Ayer his promissory note for said amount, payable on the 1st of November, 1884, with interest on the same at the rate of 25 per cent. per annum ; that it was agreed by orator and Ayer that Agnew & Co. should execute a quit-claim deed to Ayer for the land, which deed was to operate as a security for the sum loaned ; that in accordance with such agreement A. & Co. executed the deed to Ayer ; that for the purpose of securing said loan orator and wife executed a deed to Ayer of the land with the understanding that it should be held as a mortgage to secure the

payment of said note which the said Ayer continues to hold ; that in pursuance of said agreement Ayer executed an instrument of writing and gave the same to the complainant, of which the following is a copy: "Know all men by these presents, that Thomas R. Ayer, of county and State aforesaid, is held and firmly bound unto Green Franklin, of same county and State, in the sum of seven hundred and ninety-five 45-100 dollars to be paid to said Green Franklin, his executors, administrators or assigns, to the payment whereof he binds himself, his heirs, executors, administrators or assigns, firmly by these presents.

" Sealed with his seal and dated the 13th day of June, 1884.

" The condition of this obligation is that if the said Green Franklin shall pay unto the said Thomas R. Ayer seven hundred and ninety-five 45-100 dollars, with interest at 25 per cent. per annum, on the 1st of November, 1884, according to a promissory note of even date herewith, the said Thomas R. Ayer shall convey unto the said Green Franklin and his heirs forever a certain tract of land lying and being in the county of Marion, State of Florida, to wit: The south half $(S\frac{1}{2})$ of southeast $(SE\frac{1}{4})$ of section one (sec. 1) township seventeen, south, (T. 17, S.,) range twenty-two, east, (R. 22, E.,) and in the meantime shall permit the said Green Franklin to occupy and improve said premises for his own use; then this obligation to be void, otherwise to remain in full force and effect. It is distinctly understood and agreed by and between the parties hereto, that the time of payment herein above fixed shall be material and of the essence of this contract, and that in case of failure therein the intervention of equity is forever barred.

(Signed) " THOMAS R. AYER. [SEAL.]
" Signed, sealed and delivered in presence of
" R. M. SCOTT,
" J. M. STREATER."

That orator has been in the quiet and peaceable possession of the same, and that possession has never been demanded of him.

That on the 6th day of July, 1885, orator tendered to Ayer $1,007.11, being the amount of his debt and interest to that date. That said Ayer refused and still refuses to accept the same.

That he thereupon deposited the money with the Clerk of the Circuit Court to the use of Ayer, and took a receipt therefor, which receipt is also made an exhibit to the bill:

"Received of W. S. Bullock, attorney for Green Franklin, one thousand and seven ($1,007) dollars deposited for the use and benefit of Thomas R. Ayer, mortgagee of Green Franklin, who deposits in redemption of the south half of the southeast quarter of section one (1), township seventeen (17), south, of range twenty-two (22), east.

(Signed) " ROBERT BULLOCK,

"Clerk Circuit Court Marion county, Florida."

That the land is worth $3,000; that Ayer now claims that orator sold him the land absolutely, and claims that orator recognized his title by leasing the land from him; that thinking he would not be able to redeem the land he authorized Ayer to sell it for two thousand dollars and to take his pay out of it and give your orator the remainder, and that in case such sale was made orator was to have the refusal or first right to rent the place in case it should be rented; that Ayer drew up a paper and said it contained the above understanding and asked orator to sign it, which he refused, and that the said Ayer signed a paper of some kind and gave it to orator; that complainant is an illiterate negro, being neither able to read or write. The bill prays that the transaction may be declared to be a mortgage and for general relief.

42

The defendant's answer sets forth that Franklin applied to him for a loan of money which he refused to make, and that when the complainant found that he would not loan him the money he agreed to sell and did sell the land to him and executed (his wife joining therein) a deed absolute and indefeasible, which deed is made an exhibit to the answer ; that said deed was not given as a mortgage ; that said deed was fully read and explained to complainant and his wife to be an unconditional and absolute deed ; that a few days afterwards complainant came to him and regretted that he had sold the land, as he had been informed that it would bring a better price, and that he would like to have it sold again, and defendant being willing at that time that complainant should reap the benefit of a higher price agreed to sell him the land back, and gave complainant the paper marked " Ex. A.," above set forth.

That the contents of said paper were fully explained to complainant. That a short time before the close of the year 1884 complainant came to defendant and proposed to lease the place for another year, and defendant agreed to lease it to him for the year 1885, if he did not sell it, and complainant signed and delivered to this defendant a written contract therefor, a copy of which is appended marked Ex. 2. Defendant denies that he practiced any fraud or imposition on complainant. Defendant admits that complainant's attorney tendered to him what he said was $1,007.11 in U. S. currency, but that he did not examine it, that he refused to accept it, stating to complainant's attorney that he had sold the land to one McIntosh ; that since the commencement of this suit he has repurchased the land from said McIntosh ; that while the land belonged to complainant he authorized the defendant to sell it for $2,000, and that he is willing to take $1,500.

It is an established rule of equity that parol evidence

may be admitted to show that a deed absolute on its face was intended as a mortgage.

The evidence shows that at the time of the execution of the deed, June 9th, 1884, by complainant and wife, that Agnew & Co. had an absolute deed to the property which was intended by them as a mortgage merely to secure a debt. Both the parties to it—complainant and Agnew—so testify. The evidence of Agnew is to the effect that one Bullock held a similar deed for a similar purpose, and that Bullock wanting his money Agnew advanced it to him and took a deed from Bullock, complainant requesting him to do so. We think this has a material bearing on the case in this, that the complainant, who is an ignorant negro, had twice before the dealing with Ayer given a lien on his land in the form of an absolute deed.

The evidence of one Hull, a clerk of Agnew & Co., who attended especially to A. & Co.'s deeds and mortgages, is, that when the transaction was being carried on between Ayer and complainant Ayer said all he wanted was his money back and 15 or 18 per cent. interest.

One Babb testifies that about the last of November or first of December, 1884, he tried to buy the land from Franklin, and asked him the price, which he said was $2,500, and if it was mortgaged, and he told him it was mortgaged to Ayer. He then saw Ayer and he told him he held a mortgage on it for $750 and interest, and a claim for a mortgage to one Butt which he had taken up. Ayer offered to sell his claim on the place; at another time Ayer told him he owned the land.

Dunn, the Notary Public before whom Franklin and wife executed the deed to Ayer, testifies that " my best recollection is that I learned from Mr. Ayer that the consideration of the deed was money that Ayer let Franklin have, and that it was an advance or loan. In other words,

that Ayer was to let Franklin have the land back on payment of the money and interest by a certain time."

By the evidence of several persons it appears the value of the land at the time of the transaction was from $2,000 to $2,500. From the evidence of these witnesses, as to the understanding between Franklin and Ayer, the inadequacy of price if it were considered as a sale, the fact that the deed was made in midsummer while complainant's crop was in a growing state, and if the deed was strictly construed would have gone with the land, that the complainant remained in possession and gathered his crop without objection on the part of Ayer, and that possession had never been demanded of him by Ayer—the fact that a mortgage by absolute deed was the manner in which complainant had twice before given a lien on it—we are constrained to the conclusion that the deed of June 9th, though in form an absolute deed, was in reality intended by the parties as a mortgage, and is such in equity. The paper called a bond for titles, though executed on the 13th of June four days later than the deed, the evidence shows was drawn at the same time as the deed, and by the same attorney. We think it must be treated as part and parcel of the transaction as much as if it had been executed at the time. Viewing the transaction upon the papers alone, and in the absence of the evidence alluded to, we think it might be doubtful whether the parties intended to make a mortgage or a conditional sale. The papers alone would clearly import a conditional sale if it were not that the paper called in the record a bond for titles, recites that there was an existing debt evidenced by a promissory note for the amount advanced F. by A. If it were a conditional sale, and Franklin failed to pay the money on Nov. 1st, his rights would be gone. Ayer denies that he took a promissory note for the amount. Franklin swears that he did and the

bond for title signed by Ayer recites and admits it. We are bound to conclude that there was an existing debt, and this conclusion repels the idea of a conditional sale.

The authorities say that the test for determining whether a transaction is a conditional sale or a mortgage is, was there a continuing debt.

The only remaining fact that bears on the case is the agreement of F. to lease the property from Ayer for the year 1885. The evidence of Franklin, as to this, is, that this paper was made to induce Babb to buy the property; and further, that it was given to him to show the men who were talking of buying to spur them up to buy before the 1st of January. We have paid but little attention to the evidence of the complainant on account of his interest in the suit, his confused statements and his extreme ignorance, but the evidence of both complainant and defendant show that there was an understanding between them at least prior to November 1st, 1884, that defendant was to sell the place and pay complainant all over his debt.

This agreement makes complainant's evidence, as to the object of this paper, although he says it was given to him when in fact it turns up in A.'s possession, somewhat probable. Scott, one of the witnesses to it, says there seemed to be a verbal understanding between them that if A. sold he was to pay F. for what work he had done on the place. We do not think, under all the circumstances, that it was sufficient, if the original transaction was a mortgage, and we think it was, to change it to a conditional sale or the relative rights of the parties.

A maxim of equity is " once a mortgage always a mortgage."

We are very clearly convinced of the soundness of our view of this whole case, but if we were less so and entertained serious doubts as to whether it was a conditional

sale or a mortgage under a wise and benign rule of equity, we should incline to hold the transaction a mortgage because in so doing Ayer would get his money and large interest, and complainant would retain his land. In thus holding it a mortgage, if it was erroneous, we would have the satisfaction of knowing that notwithstanding our error that no one was injured. On the other hand, if we were to erroneously decide it to be a conditional sale, when we consider that the complainant had never obtained one-half its value, we would have grievously injured him.

The remaining question is as to the alleged tender and the questions of interest and cost that arise therefrom. The evidence as to a tender, is that the attorney of Franklin, on the 6th of July, tendered to Ayer $1,007.11. Ayer says that the attorney offered him a roll of bills which he said was the sum named, which he refused, because at the time he had sold the land to one McIntosh, but since the commencement of this suit he had repurchased it from said McIntosh. We think that the tender was good; and further, that as Ayer held a mortgage only on the land, that he had no right to sell it to McIntosh. Having no authority to sell to McIntosh, his own wrong act could be no excuse for not complying with the rightful demand of the complainant. But it is insisted that the bill does not allege that the money was brought into court with the bill. The bill, which was filed July 23d, alleges that the tender was made on the 6th of July, 1885, and that on its refusal by Ayer that Franklin's attorney deposited it with the clerk, to the use of Ayer, and took his receipt for it, and appends the receipt of the clerk to his bill. (See exhibit to bill.) The rule, as laid down in Jones on Mortgages, Vol. 2, sec. 1095, is: " If the bill to redeem be brought on the ground of a tender made and refused the tender should be followed up by payment into court, at the time of filing the

bill, which should contain a proper averment of compliance with this requirement."

We think the allegation in the bill, though strictly speaking not technically correct, showed that the money was deposited with the clerk of the court, subject to the use of Ayer, who if he had been disposed could have obtained it at the time of the filing of the bill, or for some time previous thereto, and was a substantial compliance with the above rule. Counsel for Ayer insists that the complainant should pay the costs of the suit even if this court holds the deed of June 9th to be a mortgage because of F's default in the payment of the debt when due, and cites 2 Daniel's Ch. Pr. and Plead., 3 Eng. Ed., 1469, *et seq.* This was the rule on a bill to redeem in England, where the law, after a mortgage was forfeited by non-payment of the debt at maturity, treated the estate as the absolute property of the mortgagee, giving him the right to deal with it as his own, either to sell it or incumber it, but we apprehend that in this State, where a mortgage has no other force than a *lien*, a different rule is more equitable and just. We see nothing in the case to authorize us in departing from the rule that the successful party is entitled to costs.

The decree of the chancellor holding the deed of July 9th to be a mortgage, is affirmed, and so much of said decree as relates to interest on the main debt subsequent to the tender of the 6th of July, 1885, and as to the costs of this suit are reversed, and it is hereby decreed that the defendant is not entitled to recover any interest on his debt subsequent to the 6th day of July, 1885, and that he pay all the costs of the court below, and of this court, and it is further ordered that the Judge of the Fifth Circuit appoint a master in chancery, and that the said Ayer be required to produce and deliver up to said master all papers

in his possession relating to this transaction between himself and the complainant, to be cancelled by said master, both on the face of said papers and on the records of such of them as may have been recorded, and that the costs of the master's report, and all his other costs, be paid by Ayer, and that the Clerk of the Circuit Court shall pay to said Ayer on demand the said sum of $1,007.11.

Decree affirmed in part, reversed in part.