MARY I. HAUGHEY AND T. D. HAUGHEY, *Appellants*, v. T. W. HEANEY, *Appellee*.

Division A.

Opinion Filed February 14, 1925.

1. In a suit to enforce a mortgage lien where the defendant answers that he had tendered to complainant the amount due upon the debt secured by the mortgage the answer should also aver, that the tender was made good by following it up with a *profert in curia* in order to obtain the benefit of the defense.

2. When a promissory note is transferred and assigned by the payee to another by a separate written instrument after maturity the purchaser takes the note subject to whatever equities the maker thereof has against the original payee in respect of the same.

3. A clause in a mortgage binding the mortgagee who is the vendor of the property to pay the expense incurred in correcting any error appearing in the title is a valid agreement on his part.

4. No order should be made by the judge in a cause affecting the rights of either party to the litlgation except on notice as the rules of court require.

An Appeal from the Circuit Court for Pasco County; M. A. McMullen, Judge.

Decree reversed.

*R. B. Sturkie*, for Appellants;

*O. L. Dayton* and *J. A. Hendley*, for Appellee.

ELLIS, J.—It is sought by this appeal to present certain questions of practice in the matter of a suit to enforce a mortgage lien upon certain real estate.

The contention is that the court erred in striking certain portions of the answer of defendants without notice to them and for failure to express in the order the reason for so doing; that there was also error in entering a final decree without notice to defendants and without having it set down for final hearing in violation of the equity rules, and in entering a decree confirming the Master's report without notice to defendants.

The facts in the case appear to be that in June, 1921, the appellee, T. W. Heaney, exhibited his bill in the Circuit Court for Pasco County against Mary I. Haughey and her husband, T. D. Haughey, to enforce a mortgage given by them to Anna M. McMullen to secure part of the purchase price of certain lands sold by her to Mary I. Haughey. The notes aggregated the sum of four thousand dollars. Eight notes were executed, each in the sum of five hundred dollars and dated August, 1917, and payable, except the first, at intervals of six months; the first due November 1, 1917, the last payable May 1, 1921. The Haugheys took possession of the property and executed the notes and mortgage. Anna McMullen, in June, 1921, "assigned, transferred and conveyed all her right, title and interest in and to the mortgage" to T. W. Heaney. A portion of the land had been released from the lien of the mortgage and there was due upon the debt the sum of $1,883.06 in consideration for which sum the assignment was made to complainant. There was a prayer of foreclosure, the payment of the amount due for principal, interest, taxes, costs and attorney's fees.

The bill of complaint appears to have been sworn to by one of the attorneys for the complainant on March 28, 1922, about nine months after it was filed.

In June, 1922, the defendants, Mary I. Haughey and her husband, answered the bill of complaint. The execution of the notes and mortgage was admitted. It was averred that the notes and mortgage were for the balance

of the purchase price of the property mortgaged and it was averred that the vendor, Anna McMullen, agreed to furnish an abstract of title to the lands showing a good marketable title ''free and clear of all clouds whatsoever.'' That the abstract showed the title to the land to be vested in Elizabeth B. Adams and not in Anna M. McMullen.

There follows a clause which is so faulty in construction that it is very difficult, if not impossible, to understand it. It is as follows: ''that in the chain of title the premises herein were conveyed to the said Elizabeth B. Adams, and that the property conveyed to the said Elizabeth B. Adams, to the predecessors in title of Anna M. McMullen, was erroneous and conveyed property situate about one-half mile from where the property described in the Bill of Complaint is situated.''

By the substitution of the preposition ''by'' for ''to'' where it occurs the second time in the clause and making of the adjective ''erroneous'' an adverb and adding the word ''described'' the meaning of the clause is that the property was conveyed to Elizabeth but that she erroneously described it in a conveyance to some one else and that the error was continued down to the conveyance to Anna McMullen's grantors, but that she correctly described the property in the conveyance to Mrs. Haughey.

That the defendant called the attention of Anna McMullen to the defect in the title and perfected it by appropriate proceedings upon her agreement to pay all expenses incurred. The expense amounted to $358.25 but Anna McMullen refused to pay the same but agreed to extend the due date of the notes maturing May 1, 1920, until May 1, 1921.

It was also averred that ''On June 30th, 1921, and again on May 1st, 1921, this defendant, prior to the time, tendered to the said Anna M. McMullen the full amount due with interest, less the sum of $358.25, which sum this de-

fendant had expended for and on behalf of the said Anna M. McMullen, in accordance with the agreement.'' The assignment of the notes and mortgage was made to the complainant June 24, 1921, so that the tender to Anna McMullen was made to the proper person.

But the tender was not made good by following it up with a *profert in curia.* At least it does not so appear from the record. See Forcheimer v. Holly, 14 Fla. 239; Matthews v. Lindsay, 20 Fla. 962; Caruthers v. Williams, 21 Fla. 485; Franklin v. Ayer, 22 Fla. 654; Greeley v. Whitehead, 35 Fla. 523, 17 South. Rep. 643.

In August, 1922, the court ordered certain portions of the answer to be stricken. It cannot be ascertained with much certainty what particular portion of the answer was stricken by this order. It was that portion ''beginning with the word 'on' on line 12 of page 3, and ending with the word 'Premises' on line one of page four, of said Answer.'' The words ''on'' and ''premises'' appear several times in the answer and as the lining and paging of the answer do not appear to have been preserved in the record we will not venture a guess as to what particular portion of the answer was stricken. But as no part of the answer between these words, wherever they appear in it, constitutes a valid defense to the suit, or matter affecting the complainant's equity, the order was not erroneous.

The order recites that the motion to strike was argued by counsel for the respective parties and the record discloses no objection to the procedure upon the ground of lack of notice.

In September, 1922, a Special Master was appointed and on the 30th of October, 1922, he filed his report which consisted of the testimony of the complainant who said that there was due for principal, $1,500.00, for interest, $457.50, and for taxes, $17.30, making a total of $1,974.80; the three notes due respectively May 1, 1920, November 1,

1920, and May 1, 1921; tax collector's receipt, and evidence as to a reasonable attorney's fee.

In November, 1922, final decree was entered. The Chancellor found the allegations of the bill to be true; that the defendants were indebted to the complainant in the sum of $1,974.80 and directed the same to be paid within three days in default of which the property should be sold and the proceeds of the sale applied to the payment of the debt, interest, costs, and attorney's fee.

On January 8, 1923, a certificate by the Clerk of the Court was filed in which it was stated that there was no motion on file to strike "Amended, Joint and Several Answer" of the defendants filed June, 1922, nor does the docket show the filing of any such motion. That the "docket" does not show any notice by the complainant to the defendants of setting the case "down for argument before the Circuit Judge, on August 19th, A. D. 1922." That the report of the Special Master was not filed in the Clerk's office but it shows that it was filed before the Circuit Judge at Clearwater on October 30, 1922, and had not been filed in the clerk's office on January 3, 1923, on which date it was first discovered by the clerk "in the files."

At the direction of solicitor for appellee other documents were included in the transcript. They were, a stipulation between counsel which antedated the answer filed in June, 1922, and related to a "default" entered against Mary Haughey which it was agreed should be vacated; that the original bill should be amended and the separate answer of T. D. Haughey should be withdrawn. That the defendants should file a joint and several answer, a copy of which was given to complainant's solicitor, and it was stipulated that "its sufficiency" might be tested on May 12, 1922, and in the event the court should strike it the defendants should have until June rule day "in which to further plead."

The answer of May 12, 1922, was also copied in the record as was also the amended bill filed on that day. There was also copied the notice by complainant's solicitor to solicitor for defendants of the former's intention to move the court to strike the answer on May 12, 1920, at Clearwater; the court's order striking portions of the answer and allowing the defendants until the June rule day to file an amended answer. There was also copied an answer by Anna McMullen. She came into the case by the addition of her name as defendant in the amended bill filed May 12, 1922.

The notes and mortgages were by written document in the form of a deed separately executed, transferred and assigned to the complainant on June 24, 1921, one month and twenty-four days after the maturity of the last note. So that the complainant took the notes subject to whatever equities the makers thereof had against the original payee in respect of the same. See Lines v. Smith, 4 Fla. 47; Kilcrease v. White, 6 Fla. 45.

The agreement of the mortgagee to pay the expense incurred in correcting the error appearing in the title was a valid agreement based upon a consideration because by her agreement to convey a good title to the lands she was under obligation to protect her vendee against the error and make a good title. See Frazier v. Boggs, 37 Fla. 307, 20 South. Rep. 245; Shouse v. Doane, 39 Fla. 95, 21 South. Rep. 807.

If the averment in the answer of the agreement and the defendant's expenditure of money resulting from it and the tender of the remainder due had been followed by a bringing into court of such balance that it might be available to complainant there would have been a sufficient defense set up to the foreclosure proceeding, assuming that the expense incurred by the defendant in correcting the error in the title was affected by no fraud or deception upon the mortgagee.

Such defense is differentiated from cases in which it is held that upon foreclosure proceedings by a vendor against the purchaser in possession under a warranty deed the latter may not set up an outstanding title in another as a defense in the absence of actual eviction from the premises.

But no order should be made by the judge in a cause affecting the parties' rights except on notice as the rules of court require.

Fair trials, orderly procedure, cannot be secured except by following the course prescribed by the existing valid rules relating to the court's procedure.

It is not for this court to say that as the matters stricken from the answer constituted no defense the defendants were not harmed by the order, because they may have amended their answer and made good the tender thereby avoiding costs, interest and attorney's fees.

The making of orders by the court affecting material matters without notice is a violation of the rules of court and orderly procedure.

The decree is reversed.

Taylor, C. J., and Browne, J., concur.

Whitfield, P. J., and West and Terrell, J. J., concur in the opinion.