FRANK E. MARKELL, a Widower, THE MARKELL COMPANY, INC., and THE MARKELL COMPANY OF FLORIDA, INC., v. ANNA I. HILPERT, a WIDOW, CHARLES R. HILPERT, *et ux*.

192 So. 392

En Banc

Opinion Filed December 5, 1939

844

*Dickinson & Dickinson* and *Troy C. Musselwhite,* for Appellants;

*Giles & Gurney* and *Maguire & Voorhis,* for Appellees.

PER CURIAM.—The parties in this opinion will be referred to as plaintiffs and defendants as they appeared in the lower court. On June 15, 1931, the plaintiffs executed and delivered to the defendant, Frank E. Markell, a deed conveying certain valuable business property situated in the City of Orlando. The deed is, viz.:

"THIS INDENTURE, Made the fifteenth day of June, in the year of our Lord one thousand nine hundred and thirty-one, BETWEEN Anna I. Hilpert, a widow and unmarried, and Charles R. Hilpert, Minnie P. Hilpert, his wife, of the County of Orange and State of Florida, of the first part and Frank E. Markell, of Connellsville, Pennsylvania, of the second part.

WITNESSETH, that the said parties of the first part for and in consideration of the sum of Ten Dollars and other valuable considerations, lawful money of the United States of America, to them in hand paid by the said party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, remised, released, conveyed and confirmed, and by these presents do grant, bargain, sell, alien, remise, release, convey and confirm unto the said party of the second part, and his heirs and assigns forever all that certain lot, tract or piece of land lying and being in the County of Orange and State of Florida, described as follows:

"Beginning at the Northwest corner of Lot Four (4) of Block Twenty-nine (29) of R. R. Reid's Addition to Or-

lando, Florida, as recorded in Plat Book C, pages 62-3, Public Records of Orange County, Florida, run South 133.71 feet, East 100 feet, North 133.71 feet, West 100 feet to point of beginning.

"TOGETHER with .all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, AND ALSO all of the estate, right, title, interest, dower and right of dower, separate estate, property, possession, claim and demand whatsoever, as well in law as in equity, of the said parties of the first part, of, in and to the same and every part and parcel thereof, with the appurtenances; To HAVE AND To HOLD the above granted, bargained and described premises, with the appurtenances, unto the said party of the second part his heirs and assigns to his own proper use, benefit and behoof forever.

"And the said parties of the first part, for themselves and their heirs, executors and administrators, do covenant, promise and agree to and with the said party of the second part, his heirs and assigns, that the said parties of the first part at the time of the sealing and delivery of these presents are lawfully seized in fee simple of a good, absolute and indefeasible estate of inheritance of and in all and singular the above granted, bargained and described premises, with the appurtenances thereunto belonging, and they have good right, full power and lawful authority to grant, bargain, sell and convey the same in the manner and form aforesaid. And that the said party of the second part, his heirs or assigns, shall and may at all times hereafter peacefully and quietly have, hold, use, occupy, possess and enjoy the above

granted premises, and every part and parcel thereof, with the appurtenances, without any let, suit, trouble, molestation, eviction or disturbance of the said parties of the first part, their heirs and assigns, or any other person or persons lawfully claiming or to claim the same. And that the same are now free, clear, discharged and unincumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and incumbrances of what nature and kind soever, including all Federal income and Federal estate taxes, whether levied or assessed, for which said property shall or might become liable.

"Subject to a lease dated August 1st, 1929, to Seaboard Oil Company, for a term of 3 years covering the following part of said property: Begin at Northwest corner of said Lot, run thence south to the westerly projection of the south line of the building known as No. 59 North Orange Avenue, thence east along the south line of said building and its continuation approximately 100 feet to the east line of the Hilpert property, thence north parallel to Orange Avenue to the north line of said lot, thence West to the point of beginning.

"Taxes for the year 1931 to be prorated as of June 15th, 1931, on the basis of 1930 assessment.

"And the said parties of the first part, for themselves and their heirs, the above described and hereby granted and released premises, and every part and parcel thereof, with the appurtenances, unto the said party of the second part, his heirs and assigns, against the said parties of the first part, and their heirs, and against all and every person or persons whomsoever lawfully claiming or to claim the same, or any part thereof, shall and will warrant and by these presents forever defend.

In Witness Whereof the said parties of the first part have

hereunto set their hands and seals the day and year above written.

"Anna I. Hilpert (Seal)

"Signed, Sealed and Delivered "Charles R. Hilpert (Seal)

in the Presence of Us: "Minnie P. Hilpert (Seal)"

"Verda C. Howard

"Ethel B. Porter

The grantee in the above deed, joined by his wife, executed and delivered to the grantors, the plaintiffs below, some three or four years thereafter an option to repurchase the lands described in the deed and the option is, viz.:

"THIS AGREEMENT, Made and entered into by and between Frank E. Markell and Kate S. Markell, of Connellsville, Pennsylvania, parties of the first part, and Anna I. Hilpert, a widow and unmarried, and Charles R. Hilpert and Minnie P. Hilpert, his wife, of Orlando, Orange County, Florida, parties of the second part.

"WITNESSETH: That the parties of the first part, for and in consideration of the sum of Ten ($10.00) dollars, and other valuable considerations, to them in hand paid by the parties of the second part, the receipt whereof is hereby acknowledged, do hereby grant and give unto the parties of the second part, their heirs, executors, administrators and assigns, an option to purchase the following described real estate in Orange County, Florida, to-wit:

"Beginning at the Northwest Corner of Lot Four (4) of Block Twenty-nine (29) of R. R. Reid's Addition to Orlando, Florida, as recorded in Plat Book C, pages 62-3, Public Records of Orange County, Florida, run South 133.71 feet, East 100 feet, North 133.71, West 100 feet to point of beginning: at and for the price of Eighty-six Thousand and No/100 ($86,000.00) Dollars cash.

"On the parties of the second part exercising said option,

and making payment, the first parties will deliver a good and sufficient warranty deed, free and clear of all incumbrances, to said property, together with Abstract of Title.

"In the event the parties of the second part exercise this option, the taxes for the year in which same is exercised shall be prorated, the first parties paying up to the time of the closing of the transaction, and the second parties for the remainder of that year; said taxes to be prorated on the basis of the previous year's assessment.

"IT IS AGREED by and between the parties hereto that the second parties can exercise this option by notice to Frank E. Markell, and payment to him of the said Eighty-six Thousand and No/100 ($86,000.00) Dollars on delivery of said deed, which two are to be concurrent, or the second parties may deposit said amount of money in Florida Bank at Orlando, Orlando, Florida, for the first parties, to be delivered on the delivery of the warranty deed aforesaid, together with abstract showing merchantable title, and the delivery of the deed to be at Florida Bank at Orlando, Orlando, Florida, in either instance.

"This option shall expire at two o'clock P. M., on the 15th day of June, A. D. 1933.

"Time is the essence of this agreement.

"IN WITNESS WHEREOF the parties of the first part have hereunto set their hands and seals, this the 18th day of June, A. D. 1931.

"Frank E. Markell (Seal)
"Kate S. Markell (Seal)"

"Signed, Sealed and Delivered
in the Presence of Us:
"R. S. Matthews
"Josephine Richey.

For a considerable length of time prior to June 15, 1931, plaintiffs below were the owners of the real estate, above described, but the same was subject to mortgages, except

thirty feet on the corner, but uncancelled tax certificates appeared against the entire tract. A. T. O'Neill, a real estate broker, maintained an office on part of the property, *supra,* and Charles R. Hilpert applied to him for assistance in obtaining a loan of $60,000.00 with which to refinance all the mortgages and tax lien indebtedness then existing against the property.

Mr. O'Neill approached the defendant, Frank E. Markell, for a loan of $60,000.00 and offered as security therefor the real estate described in the deed. The defendant made it known that he was not interested in making the loan. The defendant and his partner, Mr. Jull, subsequently offered $88,000.00 in cash and certain property located at Homosassa, Florida, which they valued at the sum of $45,000.00 for the Hilpert property. The defendant subsequently offered his home at Homosassa, Florida, and a lot located on North Orange Avenue in Orlando and $60,000.00 in cash for the Hilpert property, but the Hilperts refused or declined the two offers.

Mr. Markell and Mr. Jull returned to their homes in Pennsylvania in the Spring of 1931, and some correspondence passed between the defendant and Mr. O'Neill in which it developed that the defendant was not interested in making a loan on the Hilpert property, but might be interested in buying the property. The defendant returned to Florida in June for the purpose of closing an oil lease on his North Orange Avenue property, and upon contacting O'Neill in Orlando the Hilpert item was again considered by him.

On June 15, 1931, Frank E. Markell, Charles R. Hilpert and A. T. O'Neill met in the office of C. P. Dickinson, an attorney of Orlando, where the warranty deed and repurchase option, *supra,* were drafted by Mr. Dickinson and the deed signed by Charles R. Hilpert and wife Minnie P.

Hilpert, and Anna I. Hilpert, mother of Charles H. Hilpert. Mr. Markell took the repurchase option to his home in Pennsylvania and he and wife executed it under date of June 18, 1931, and the same was returned to Mr. Dickinson at Orlando for the purpose of closing the trade. The deed, after the grantors signed same, remained in the possession of Charles R. Hilpert as agreed upon by the parties. The consideration of the deed was $65,000.00, and the purchase agreement as agreed upon by the parties, was for $86,000.00, to be paid by the Hilperts to Markell on or after June 15, 1933.

On June 2, 1931, the parties met at the Florida Bank at Orlando, when the deed was delivered by Charles R. Hilpert to C. P. Dickinson as attorney for Frank E. Markell, and attorney Dickinson, as attorney for Frank E. Markell delivered to Hilpert the option agreement. The check of Frank E. Markell in the sum of $65,000.00 was used to pay the then existing mortgages on the Hilpert property and tax liens, and the appropriate sum of $12,000.00 in excess thereof was paid to Charles R. Hilpert. Frank E. Markell immediately went into possession of the property, and the tenants then in possession of the property each obligated themselves to pay the rents monthly to Markell or his authorized agent, and not to the Hilperts. The undisputed control and possession of the property on the part of Markell continuously since July 2, 1931, is not questioned. The 1931 taxes on the property here involved were prorated between the grantors and grantees.

On December 31, 1934, Frank E. Markell entered into an agreement to convey the real estate involved in this suit, with other real property located in the State of Pennsylvania, and stocks and bonds, to the Markell Company, Inc., a Delaware corporation, but for some reason failed to

convey the property here involved in the Delaware corporation. The Delaware corporation .issued 1,000 shares of stock, of which amount 510 shares issued to Frank E. Markell, 300 shares to his daughter Helen M. Fuller, and 190 shares to his granddaughter, Katherine Knox McClaren. Frank E. Markell made a gift of the stock in the Markell Company, a Delaware corporation, to his daughter and granddaughter.

The defendant, Markell, at a subsequent date, organized or caused to be organized, under the laws of Florida, a corporation, namely, the Markell Company of Florida, Inc., and one share each of said company's stock was issued by the Florida corporation to Frank E. Markell, Helen M. Fuller and Katherine Knox McClaren. The Markell Corporation, Inc., the Delaware corporation, bought and paid cash for five shares of stock in the Markell Company of Florida, Inc., a Florida corporation. The land involved in this suit was conveyed by Frank E. Markell to the Markell Company of Florida, Inc., the conveyance being dated May 15, 1936. All the conveyances affecting the land, *supra,* were duly recorded.

On May 10, 1937, plaintiffs filed their bill of complaint, which was subsequently amended, in the Circuit Court of Orange County, Florida, for the purpose of declaring the deed, *supra,* a mortgage and that the plaintiffs had a lawful right to redeem therefrom. The original bill, as amended, further charged that the two corporate defendants were not *bona fide* purchasers of the land involved in the suit at bar, but were the *alter ego* of Frank E. Markell. Answers were filed on the part of the defendants, and an order was entered referring the case to a special master for the purpose of taking testimony which was completed.

The lower court, on final hearing, entered an interlocutory

order holding: (a) that the transaction between the plaintiffs and the defendant constituted a loan and not a sale and that the deed executed by plaintiffs to Frank E. Markell constituted a mortgage; (b) that the proof was not sufficient to find Frank E. Markell guilty of usury; (c) and that the two corporations were not *bona fide* purchasers of the real estate involved in the case at bar, but their rights in the property were acquired subject to the equities of the plaintiffs.

The case was again by appropriate order referred to a general master to take and state an account of rents received by the defendant and rents due and not collected, the expenditures for taxes, repairs and cost of preservation of the premises, and testimony was taken thereon. The lower court, when the master's report was presented, held that the amount to be paid by the plaintiffs to the defendants for the redemption of the property on the 20th day of August, 1938, after allowing all lawful claims to the respective parties, was the sum of $59,360.16, with interest.

From the final decree an appeal has been perfected to this court and a number of assignments of error presented and argued for a reversal in this court.

Counsel for appellants pose their first question, viz.: "Is not a grantor in a deed absolute made in this State conveying property in this State, even though an option is given back by the grantee to repurchase, making a conditional sale, required, in order to have such transaction decreed a mortgage, on parol testimony, to allege in his bill to redeem, and prove, such a state of facts as to bring his case within some recognizable head of equity jurisdiction, as fraud, accident, mistake, surprise, as laid down by the Supreme Court of this State in the case of Chaires v. Brady, 10 Fla. 133? The lower court answered: No."

This question embraces assignments of error Nos. 1, 2, 3, 5, 9, 17 and 29. It is contended that the original bill of complaint as amended is fatally defective because facts are not sufficiently alleged to bring the case at bar within some recognizable head of equity such as fraud, accident, mistake, and surprise, and the authorities relied upon are Chaires v. Brady, 10 Fla. 133 Section 5724 C. G. L., and Holmberg v. Hardee, 90 Fla. 787, 108 So. 211, and other cases cited.

It is true as contended by counsel for appellants that this Court in Chaires v. Brady, supra, held that it was necessary in a bill of complaint to allege facts sufficient to bring the case within some subject of equity jurisdiction, viz., fraud, accident, mistake or surprise. The case was cited in Holmberg v. Hardee, 90 Fla. 787, 108 So. 211, but the contention of counsel as to the necessary facts constituting some equitable subject that should be set out in a bill of complaint was not reaffirmed therein by this Court. In the case of Lindsay v. Matthews, 17 Fla. 575, the case of Chaires v. Brady, supra, was cited but not to sustain the construction thereon for which it is cited here. The same is true of the holding of this Court in the cases of Franklin v. Ayer, 22 Fla. 654, and Shear v. Robinson, 18 Fla. 379.

In First National Bank v. Ashmead, 23 Fla. 379, 2 So. 657, this Court held that parol testimony was admissible in equity to show that a deed of conveyance absolute upon its face was intended as a mortgage, and where it is shown that such conveyance has been executed to secure the payment of money, equity will treat it as a mortgage. The Court looks beyond the terms of the instrument to the real transaction or what was intended to be effected by the parties, and any evidence, whether written or oral, tending to show this, is admissible The rule of pleading enunciated in Chaires v. Brady was not followed by this Court in the

cases of Shad v. Livingston, 31 Fla. 89, 12 So. 646; Smith v. Hope, 51 Fla. 541, 41 So. 69; Connor v. Connor, 59 Fla. 467, 52 So. 729; Elliott v. Connor, 63 Fla. 408, 58 So. 241; Brown v. Banning, 71 Fla. 208, 71 So. 327.

In the case of Howard v. Goodspeed, 101 Fla. 699, 135 So. 294, this Court reaffirmed the language in Elliott v. Connor, *supra,* viz.: "If there be a doubt as to the real purpose for which the deed was executed by Mrs. Connor and therefore uncertainty as to whether it is a conveyance or a mortgage, the instrument under the circumstances of this case should, pursuant to the statute, be deemed and held a mortgage."

It appears that this Court, many years ago, abandoned the restricted doctrine enunciated in Chaires v. Brady, *supra,* and assumed ground wider and more comprehensive than provided by Section 5724 C. G. L., and held generally, independent of this statute, that parol evidence is admissible in equity to show that a deed of conveyance, absolute upon its face, was intended as a mortgage, and where it is shown that such a conveyance has been executed to secure the payment of money, equity will treat it as a mortgage. The Court looks at substance rather than form, makes inquiry and hears evidence beyond the terms of the instrument to the very heart of the transaction so as to determine the intent of the parties and all admissible evidence bearing upon this broad equitable principle is received and considered by the Court, whether written or oral, as it is the intention of equity to promote justice and to prevent fraud and imposition. The bill of complaint as amended was fully sustained by the many decisions of this Court since the case of Chaires v. Brady, *supra.*

The second question posed by appellants is, viz.: "The owner of real estate conveys same to a grantee, putting

grantee in possession and prorating the taxes and takes back an option from grantee and wife to repurchase the property at an up-set price, grantors writing to the tenants that they have sold the property to grantee and directing the payment of rents to grantee, and procuring from the tenants occupying the property and delivering to grantee a statement saying the tenants understood grantee is purchasing the property and that they have no other interest than tenants in common in assigning the only written lease to the grantee who goes into possession of the property and remains in posession, collecting the rents, issues and profits and paying the taxes and keeping the property up, does not such transaction constitute a conditional sale? The lower court answered: No."

This question is presented by assignments 4, 5, 9, 16, 17, 28, and 51. The cases cited to sustain the question, *supra,* are, viz.: Brown v. Banning, 71 Fla. 208, 71 So. 327; Hollingsworth v. Hancock, 7 Fla. 338; Franklin v. Ayer, 22 Fla. 654; Smith v. Hope, 47 Fla. 295, 35 So. 865; Brumick v. Morris, 131 Fla. 46, 178 So. 564, and other authorities. In the case of Brown v. Banning, *supra,* there was an absolute conveyance and a contract to reconvey. The loan was for $35,000.00, while the agreement to reconvey provided for the $35,000.00 with interest at 8 per cent and a bonus of $15,000.00 for the loan and an indebtedness of the grantors in the conveyance of attorney's fees for $20,000.00, making a total sum of $71,000.00. The Court took evidence and held that the instrument was a mortgage. In Smith v. Hope, *supra,* the case was presented to this Court on the allegations of the bill of complaint which had the instrument attached and made a part thereof. The prayer of the bill was for the delivery of the cattle. A demurrer was sustained by the lower court and reversed

on appeal in this Court. Evidence was not taken or considered and in fact was not before the court, but was decided on demurrer as to the sufficiency of the bill. We have considered the cases cited to sustain these assignments.

The evidence shows that the Hilperts were in financial difficulties, and, while their application for a loan to the defendant was not considered with favor, at the same time a deed to be placed in escrow was considered by the parties; the defendant offered his home at Homasassa, with a lot in Orlando and sixty thousand dollars for the property; the defendant and a business associate offered property located at Homosassa valued at $45,000.00, and $80,000.00 in cash for the property, and these offers were refused by the plaintiffs. The purchase agreement provided for the payment of $86,000.00 within two years after June 15, 1931, when the property would be reconveyed. Whether or not a deed is a mortgage is a question of fact to be determined by the evidence. The Florida decisions seem to be in accord in so holding. This rule finds support in the case of Russell v. Southard, 12 How. 139, 13 L. Ed. 927.

The next question for consideration involves assignments of error 3, 4, 5, 7, 8, 9, 14, 16, 17, 28, 51 and 52. It is contended by counsel for appellant that the lower court erred in holding that the deed in question was a mortgage and the defendant had a lawful right to redeem. Counsel further contends that the lower court erred in applying the law to the facts when it held that the deed was a mortgage on the evidence of prior negotiations and upon the disputed testimony, and that the findings were against the weight and probative force of the testimony as to the value placed on the property in the sum of $100,000.00.

It is not disputed that after the delivery of the deed and repurchase agreement on July 2, 1931, the grantee in the

deed went into immediate possession of the property therein described and the taxes for the year were prorated. The plaintiffs directed the tenants to make payment of rents to the defendant, and stated they had sold the property to Mr. Markell. The amount paid plaintiffs for the deed was $65,000.00 and the repurchase price was $86,000.00. The court found the market value of the property on June 15, 1931, to be $100,000.00. Ken Gurnsey, a relator, testified that in his opinion the market value of the property on June 15, 1931, was around $78,949.24; Mr. Brass placed the value at around $65,000.00; while another relator was of the opinion that the value of the property was around $133,000.00. There can be no question that the Hilperts were in financial trouble on June 15, 1931. The defendant Markell by the execution and delivery of the repurchase agreement recognized the right of the Hilperts to repurchase within two years after June 15, 1931, at the sum of $86,000.00, and the Hilperts no doubt construed this two-year period as time in which they were permitted or allowed to redeem. These questions of fact, as well as many others, the chancellor below determined from all the evidence before him on final hearing. The law is well settled that a presumption exists in the appellate court that an order made by the lower court and assigned as error is correct and the burden of showing error is on the party asserting it. See Stover v. Stovall, 103 Fla. 284, 137 So. 249. Likewise, this Court is committed to the rule that the findings of the chancellor upon the evidence will not be disturbed unless such findings are shown to be clearly erroneous. See Sandlin v. Hunter, 70 Fla. 514, 70 So. 553; Travis v. Travis, 81 Fla. 309, 87 So. 762; Lucas v. Wade, 43 Fla. 419, 31 So. 231.

We have carefully read all the evidence, examined the

many exhibits placed in the record by the parties, the views of counsel as to the weight and probative force of the testimony as expressed in the briefs have been fully considered and our conclusion is that there is substantial testimony to support the findings of the chancellor.

Under assignments of error Nos. 6, 7 and 15 it is contended that the lower court erred in refusing to give due weight and consideration to the testimony of attorney C. P. Dickinson to whom the parties went and in whose office the deed and repurchase agreement were prepared and executed. Our study of the record shows a sharp conflict in the evidence as to what occurred in the office of Attorney Dickinson at Orlando on June 15, 1931. Mr. O'Neill and the Hilperts gave testimony as to certain events occurring, while Mr. Markell and Mr. Dickenson and some of the latter's employees testified to a different statement of facts. The lower court heard the testimony, argument of counsel, and examined the authorities, and concluded and made findings to the effect that the deed was given to secure the payment of money. We find sufficient evidence in the record to sustain this conclusion and it has not been made to appear that the lower court abused its discretion in so holding. See Farrington v. Harrison, 95 Fla. 769, 116 So. 497. The lower court, as shown by the record, considered fully the testimony of attorney Dickinson, along with the other testimony in the case.

It is next contended that the lower court erred in taking judicial knowledge of the original records filed in the Supreme Court of Florida in the case of Brown v. Banning, 71 Fla. 208, 71 So. 327. It is argued that the lower court was unduly influenced in reaching a conclusion in the case at bar by the Supreme Court record in the case, *supra*. We fail to appreciate the merits of this argument. It is obvious

that a chancellor in considering a case on its merits on final hearing has not only a right but it becomes his duty to consult, examine and consider any reliable source of information, precedents or authorities which he thinks dependable or reliable to assist him in reaching a conclusion justified by the law and facts of the case. We fail to find reversible error on the part of the lower court in giving weight and consideration to the case of Brown v. Banning, as reported, as well as the transcript and briefs filed in this Court upon which the opinion is based. It has not been made to appear that this transcript unduly influenced the chancellor in entering the decree appealed from.

It is next contended that plaintiffs were guilty of laches in bringing the suit at bar and that the lower court erred in refusing to dismiss the bill of complaint as amended for this reason. The deed and repurchase agreement are each dated June 15, 1931, and the grantors in the deed had two years from this date in which to repurchase the property and their right to repurchase under the terms of the agreement expired June 15, 1933. The bill of complaint in the case at bar was filed in the Circuit Court of Orange County, Florida, on May 10, 1937. It has not been made to appear that laches appeared on the face of the bill of complaint as amended. The suit, as shown by the record, was filed within less than four years after the time allowed to repurchase expired. The case of Geter v. Simmons, 57 Fla. 423, 49 So. 131; Horne v. Turner C. & L. Co., 55 Fla. 690, 45 So. 1016; Booth v. Lenox, 45 Fla. 191, 34 So. 566, are cited. We are fully in accord with the holdings of this Court in the cases cited.

This Court has held that the right to foreclose and redeem afford mutuality. See Connor v. Connor, 59 Fla. 467, 52 So. 729; Elliott v. Connor, 63 Fla. 408, 58 So. 241; De-

Bartlett v. DeWilson, 52 Fla. 497, 42 So. 189, 11 Ann. Cas. 311.

In the case of Russell v. Southard, 12 How. 139, 13 L. Ed. 827, suit was brought in equity to redeem a mortgage dated September 24, 1827, in the form of an absolute deed from Russell to Southard. Simultaneously with the delivery of the deed, Southard gave to Russell a memorandum or an agreement to repurchase by the payment of a specified sum on a date named in the memorandum. The right to repurchase was not exercised within the time named and Russell went into the immediate possession of the property. The suit to redeem was filed after the lapse of nineteen years and eight months from the time the loan became payable. The original mortgagee had been dead many years. More than sixteen years had elapsed since the defeasance was surrendered. Southard treated the property as his own and had improved it by the expenditure thereon of considerable money, the land had increased in value, the City of Louisville had grown up around the 200-acre farm. It appeared that Southard intended to take an unconscientious advantage of Russell and his heirs. The court held that the Russell heirs were not guilty of laches and had a right to redeem after nineteen years from the execution and delivery of the deed and memorandum. The court also held that the transaction was in substance a loan of money upon the security of the farm and that a court of equity is bound to look through the forms in which the contrivance of the lender has enveloped it and declare the conveyance of the land to be a mortgage. This assignment is without merit.

It is next contended that the lower court erred in finding from the facts adduced that the Markell Company, Inc., a Delaware corporation, was the *alto ego* of Frank E. Markell.

The record shows that Frank E. Markell organized the corporation on December 29, 1934, and became its president; that the company issued 1,000 shares of stock and Frank E. Markell received 510 shares, his daughter, Helen M. Fuller 300, and his granddaughter 190 shares; and that the property acquired by the corporation was supplied by Frank E. Markell and that his daughter and granddaughter conveyed but little, if any, property into the corporation. The lower court held that the property and the corporation were owned substantially by Markell and that his relatives were only assisting him in his business undertakings.

This Court is committed to the principle that a corporation cannot be formed for the purpose of accomplishing fraud, or other illegal acts, under the guise of the fiction that a corporation is a legal entity, separate and distinct from its members. When this is attempted, the fiction will be disregarded by the courts and the acts of the real parties dealt with as though no corporation had been formed. The modern doctrine confines the fiction of the corporate entity to the purpose for which it was adopted; the corporate entity doctrine has been repudiated in all cases where it has been insisted on as a protection to fraud or other illegal transactions. The courts will look beyond the corporate form to the purpose of it and to the officers who are identified with that purpose See Biscayne Realty & Ins. Co. v. Ostend Realty Co., 109 Fla. 1, 148 So. 560. We fail to find merit in this assignment.

The next contention is that since the court by the terms of the interlocutory order dated June 3, 1938, holding that the conveyance from the Hilperts to Markell dated June 15, 1931, was a mortgage and not a deed, interest at the rate of 8 per cent per annum should have been allowed rather than at the rate of 6 per cent. The amount named to be paid in

the repurchase agreement was the sum $86,000.00, or a clear profit of $21,000.00. The chancellor was of the opinion that interest at the rate of 6 per cent per annum was equitable and just. We agree fully with the chancellor below. See Foster v. Thornton, 131 Fla. 277, 179 So. 882.

It is contended that the evidence is insufficient to sustain the findings of the Chancellor on the question of the valuation of the property at the sum of $100,000.00 on June 15, 1931. The record shows that several appraisers testified as to the market value of the property and the amounts so fixed ranged from $65,000.00 to $133,000.00. Evidence of sales of property in the location of the property here involved was submitted. We think there is sufficient evidence to sustain the finding of the chancellor. See Kreher v. Morley, 84 Fla. 121, 92 So. 686; Smith v. Dowling, 81 Fla. 867, 89 So. 315.

It is necessary for a court to take into consideration all the facts and circumstances of the parties and if it is clear that the real purpose of the parties to an absolute conveyance of property was to secure the payment of money, the conveyance will be regarded as a mortgage. See Stovall v. Stokes, 94 Fla. 717, 115 So. 828; McKinney v. Gainey, 96 Fla. 547, 118 So. 917. It has been held by this Court that the relation of the parties at the time of its execution may be considered in determining whether a deed is a mortgage. The conduct of the parties and the circumstances under which the instrument was executed may be considered. The circumstances of the parties and the conditions under which the deed was executed may become material. The value of the property conveyed should be considered in connection with the amount paid or expressed in the deed. The secret intention of either party as to the purpose of the instrument will not prevail. See First Natl. Bank v. Ashmead, 23 Fla. 379, 2 So. 657, 665; Holmberg

v. Hardee, 90 Fla. 787, 813, 108 So. 211; Stovall v. Stokes, 94 Fla. 717, 115 So. 828; McKinney v. Gainey, 96 Fla. 547, 118 So. 917; Connor v. Connor, 59 Fla. 467, 52 So. 727; Walls v. Endel, 20 Fla. 86; DeBartlett v. DeWilson, 52 Fla. 497, 42 Sou. 189; Franklin v. Ayer, 22 Fla. 654.

Many of the assignments here presented are based on questions of facts presented and ruled upon in the lower court. It is true that many of these assignments involved disputed questions of fact and a litigant in bringing his case here on appeal is charged with the responsibility of making errors clearly to appear, as there exists in law as well as in equity a presumption of the correctness of the ruling of the lower court. This Court by an unbroken line of decisions has held that the findings of a chancellor on questions of fact will not be disturbed on appeal unless such findings are clearly shown to be erroneous. See Wofford v. Wofford, 129 Fla. 445, 176 So. 499; Kreher v. Morley, 84 Fla. 121, 92 So 686. See also: Smith v. Dowling, 81 Fla. 867, 89 So. 315; Travis v. Travis, 81 Fla. 309, 87 So. 762; Commercial Bank of Ocala v. First National Bank, 80 Fla. 685, 87 So. 315; Hill v. Beacham, 79 Fla. 430, 85 So. 147; Smith v. OBrien, 75 Fla. 252, 78 So. 13; Simpson v. First National Bank, 74 Fla. 539, 77 So. 204.

The transcript in the case at bar is rather voluminous, the briefs well prepared, the oral orgument at the bar of this Court has proven helpful, and the legal rights of the respective parties have been ably and thoroughly presented. After a careful and conscientious consideration of the entire record we fail to find reversible error.

The decree appealed from is hereby affirmed.

TERRELL, C. J., WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.