852

LONDON-BUTTE GOLD MINES COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 95858.    Promulgated April 16, 1940.

*Lewis A. Dick, Esq.*, for the petitioner.
*Gene W. Reardon, Esq.*, for the respondent.

854

OPINION.

HARRON: During its development stage, the petitioner in 1933 and 1934 mined and sold ore to two smelters for prices totaling $48,289.63, which amount was in part impounded with the District Court and in part withheld by the smelters pending the outcome of the litigation between petitioner and another mining company to determine the rightful owner of the ore mined and sold by petitioner. On May 20, 1935, after the petitioner had passed into its production stage, the Supreme Court of Colorado finally determined that the

petitioner was the owner of the ore and therefore entitled to the impounded funds. Thereafter those who had withheld funds made payments to petitioner as the owner of those funds. The respondent included the amount of $48,289.63 in the 1935 taxable income of petitioner. The petitioner assails respondent's action in this respect as erroneous.

Disregarding momentarily the special facts that petitioner is a mining company and that its business was in the developmental stage prior to February 20, 1935, and, in the production stage thereafter, could petitioner have accrued on its books in 1933 and 1934 the proceeds from the sales of ore made in those years, or were those proceeds accruable on the books only after May 20, 1935?

Petitioner keeps its books and reports its income for taxation on the accrual basis. It is a settled rule that income is not accruable until the right to receive the income and the amount of income to be received is established. Income is not accruable unless the taxpayer has good reason for believing that the income can be collected. *Leo M. Klein*, 20 B. T. A. 1057; *American Fork & Hoe Co.*, 33 B. T. A. 1139. In *Commissioner* v. *Darnell, Inc.*, 60 Fed. (2d) 82, the court said:

> * * * if income has neither actually been received during the taxable year, nor the right to its receipt been definitely fixed during the year, as to both the existence of an obligation on the part of the payor and the amount to be paid, such income is properly to be allocated only to that year in which it was in fact received or in which the right to receipt became fixed and liquidated.

Herein the ownership of the ore which petitioner sold to the two smelters was in dispute until May 20, 1935. While the smelters did not deny their obligation to pay for the ore, the right of petitioner, as opposed to another mining company, to receive payment for the ore was not fixed and certain until May 20, 1935. The proceeds of the sales, therefore, would not have been accruable as income, ordinarily, until May 20, 1935, when the right to receive such proceeds was established. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *United States* v. *Safety Car Heating & Lighting Co.*, 297 U. S. 88. The respondent so determined and included the proceeds from the sales of ore made in 1933 and 1934 in the taxable income of petitioner for 1935.

The petitioner, however, contends that since under the provision contained in articles 235 (a) and 23 (a)–15 of Regulations 77 and 86, respectively, the proceeds would have constituted a capital receipt or reinvestment of capital in 1933 and 1934, if then received or accruable, such proceeds constituted a return of capital in 1935 when received. The petitioner's contention that net receipts from minerals

sold during the development stage of a mine constitute a return of capital because the above articles permit the crediting of net receipts against development expenses is not sound.

Articles 235 (a) and 23 (a)–15, *supra*, in so far as applicable provide as follows:

*Allowable capital additions in case of mines.*—(a) All expenditures in excess of net receipts from minerals sold shall be charged to capital account recoverable through depletion while the mine is in the development state.

On stipulation it was agreed by petitioner and respondent "that if the proceeds from the ore sales had been received by petitioner during its development stage, that is prior to February 20, 1935, it would have been credited to development expense and not classed as income under Article 235 (a) of Regulations 77, and Article 23 (m)–15 of Regulations 86." While the above stipulation refers to the term "income", it can only mean that the proceeds from the 1933 and 1934 sales, if they had been received in such years, and assuming that the development expenses were in excess thereof, would not have been *taxable* income, but income nevertheless and not a return of capital.

Section 22 of the Revenue Acts of 1932 and 1934 provides that gross income includes:

\* \* \* gains, profits, and income derived from \* \* \* sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from \* \* \* the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.

Articles 55 and 22 (i)–5 of Regulations 77 and 86, respectively, provide that:

In the case of a manufacturing, merchandising, or mining business "gross income" means the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources.

It is stated in *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182, that, on an accrual basis, "total sales" are manifestly accounts receivable arising from sales, and these accounts receivable, less the cost of the goods sold, are includable in "gross income." Apparently by "net receipts from minerals sold" referred to in article 235 (a) and 23 (m)–15, *supra*, is meant the total value or aggregate accounts receivable arising from total sales, less the cost of the goods sold. Under such regulations a mining company, during its development stage, is permitted to credit "net receipts from mineral sold", if any, against development expenses. In this case, did petitioner have any net receipts from mineral sold in 1933 and 1934 to credit against development expenses? The answer must be in the negative because it was not until May 20, 1935, that the petitioner's right to receive the

proceeds of sales was established. Under its system of accounting it could not properly accrue the amounts in question as income or receipts from sales prior to May 20, 1935.

The petitioner points to the fact that it set up the sales as accounts receivable in 1933 and 1934 and that when the proceeds were received in 1935 they were credited to such accounts. However, bookkeeping entries are not determinative of tax liability. *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216.

It is held that the petitioner had no "net receipts from minerals sold" in 1933 and 1934 which it could accrue on its books to be credited to expense during its development stage under articles 235 (a) and 23 (m)–15, *supra*. It is further held that, since the proceeds of the sales here in question were not properly accruable as income prior to May 20, 1935, such proceeds can not be treated in 1935 for income tax purposes except upon the same basis as any other income received or accrued in 1935. Petitioner had reached the production stage of its business on February 20, 1935. Thereafter, receipts in 1935 from sales of ore not properly accruable in prior years could not be credited against development expense under articles 235 (a) and 23 (m)–15, *supra*, which permit such credit only during the development stage of the mine. The amount of $48,289.63 constituted taxable income in 1935. The action of the respondent in including the amount of $48,289.63 in petitioner's taxable income for 1935 is approved.

*Decision will be entered for respondent.*