ANNA I. HILPERT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES R. HILPERT AND MINNIE P. HILPERT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 519, 520. Promulgated December 14, 1944.

*H. M. Voorhis, Esq.*, for the petitioners.
*Arthur H. Fast, Esq.*, for the respondent.

#### OPINION.

OPPER, *Judge*: By these proceedings petitioners contest deficiencies in income tax for the year 1940 as follows:

Anna I. Hilpert, Docket No. 519_____ $1, 057..71
Charles R. Hilpert and Minnie P. Hilpert, Docket No. 520__ 3, 663.04

The question involved is the proper treatment for tax purposes of a transaction involving real property sold by petitioners in the taxable year upon the successful termination of litigation instituted by petitioners in a state court to have a deed absolute on its face declared a mortgage.

The facts are submitted in the form of a stipulation by the parties. As so stipulated they are hereby found. Petitioners, who are individuals residing in Orlando, Florida, filed their tax returns for the year in question with the collector for the district of Florida.

Petitioners, apparently as members of a partnership, were the owners of property described as lot 4, block 29, Reid's Addition to Orlando, Florida. It is stipulated "that the adjusted value of said property as of March 1, 1913 was $15,668.25." In 1931 they executed and delivered a deed to the property, with full warranties, to one Frank E. Markell for a consideration of $65,000 in cash. Simultaneously with the delivery of the deed petitioners received an option to reacquire the property by June 15, 1933, for $86,000 cash.

In February 1932 letters were exchanged between representatives of petitioners and the collector of internal revenue, in accordance with which petitioners filed income tax returns for the year 1931, reporting a profit on the sale of $49,209.69.

Petitioners failed to exercise the option to reacquire, but in May 1937 they instituted a suit in chancery in Orange County, Florida, "for the purpose of securing a decree from said Court holding the transaction between the Hilperts and Markell was a mortgage and that the Hilperts be permitted to redeem the above described property." In the following year that court entered a decree, subsequently affirmed by the Florida Supreme Court, which in the language of the latter court held:

(a) that the transaction between the plaintiffs and the defendant constituted a loan and not a sale and that the deed executed by plaintiffs to Frank E. Markell constituted a mortgage; (b) that the proof was not sufficient to find Frank E. Markell guilty of usury; (c) and that the two corporations [holders of the title by mesne conveyances] were not bona fide purchasers of the real estate involved in the case at bar, but their rights in the property were acquired subject to the equities of the plaintiffs.

The Florida Supreme Court handed down its decision on December 5, 1939, and its mandate was filed in the Circuit Court in Orange County on December 26, 1939. Thereafter an accounting was had between Markell and petitioners to determine the amount of rent collected, taxes paid, and interest accrued, which accounting resulted in a net redemption figure for the property of $54,364.67.

Simultaneously with the inception of the litigation petitioners had entered into an agreement with Lawton Investment Co., subsequently succeeded in interest by Lawrence Lawton and Lena Lawton, for the sale of the property upon the successful outcome of the chancery proceeding, the deed to be delivered to the vendee "upon the payment to said bank [the escrow agent] of the sum of $10,000, plus one-half the difference between $65,000 and any sum less than $65,000 decreed by the Circuit Court of Orange County, Florida, in the suit of Anna I. Hilpert, et al, versus Frank E. Markell, et al, to be the amount necessary to be paid to redeem the above mentioned mortgage."

After the filing of the Supreme Court's mandate "the grantees of Markell executed a deed to the Hilperts and on the 18th of January 1940 the Hilperts executed a deed to Lawrence Lawton and Lena Law-

ton" and the latter paid to the escrow agent "sufficient money to pay off the lien on the above described property and to pay to the Hilperts the amount of money due them &ast; &ast; &ast; [the escrow agent] paying to Markell's grantees $54,364.67 and to the Hilperts $17,067.67 .&ast; &ast; &ast;."[1]

In the deficiency notice respondent determined "that the amount of $10,635.33, representing net rentals received by the mortgagee on Lot 4, Block 29, Reid's Addition to Orlando, Florida, and applied as a credit on your mortgage during the taxable year, constitutes ordinary income." He also computed gain from the sale of the property at $55,-764.12 by deducting from a "sale price" of $71,432.37 an adjusted basis of $15,668.25.

Although the 1931 transaction had the outward appearance of a sale of petitioners' real property with the reservation of an option to repurchase at a higher figure, the state court, after protracted litigation, has held it to have been in reality a mortgage. *Markell* v. *Hilpert*, 140 Fla. 842; 192 So. 392. In settling the property rights of the litigants, this decision was ultimate and binding and for tax purposes it is, consequently, conclusive here. *Blair* v. *Commissioner*, 300 U. S. 5; *Freuler* v. *Helvering*, 291 U. S. 35; *Commissioner* v. *Rhodes* (C. C. A., 8th Cir.), 117 Fed. (2d) 509. It follows that when the petitioners in the tax year disposed of the property in what was an unmistakable sale, they did no more and no less than is done by any vendor when he sells property covered by a mortgage or other lien and receives in the purchase price cash or other property. The difference between his basis and the fair market value of the consideration received is taxable.[2] Accordingly, petitioners are properly chargeable as capital gain with the difference between their basis and the consideration for the sale.

There is no dispute as to basis. The controversy relates to the amount of the consideration. It is true that all that petitioners received

---

[1] Computed as follows:

| | |
|---|---:|
| "Original amount of mortgage | $65,000.00 |
| Amount to redeem | 54,364.67 |
| | |
| Difference | $10,635.33 |
| One-half of difference | 5,317.67 |
| | |
| Cash amount named in agreement for deed | $10,000.00 |
| One-half of difference of mortgage and amount to redeem | 5,317.67 |
| Commission agreed upon by parties | 1,750.00 |
| | |
| Total | $17,067.67" |

[2] Internal Revenue Code—

"SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS.

"(a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) for determining gain &ast; &ast; &ast;.

"(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

upon the sale was the cash paid to them by the vendees. But the existence of the lien has to be taken into account in computing the sale price. Its discharge by the purchasers was necessary to their acquisition of clear title to the property. The payment they made for this purpose was a component of the cost of the property to them. *Fulton Gold Corporation*, 31 B. T. A. 519. Since it was from petitioners, and from them alone, that the property was purchased, the amount of the lien must be included in the consideration.

It will not do to say that all petitioners sold was an equity of redemption. The character which the state court decree impressed upon the transaction was that of a mortgage. Petitioners did not acquire their interest in the property for the first time upon the entry of that decree, which merely declared the existence of a legal relationship that must have inhered in the transaction from its inception. They owned the property as a unit from the time of its acquisition by them and when they sold it, they acted no differently from any seller who disposes of real estate which at the time is subject to an encumbrance. It is the property which is sold, not the unencumbered fragment alone. And the necessity for inclusion of the mortgage in the sale price follows even more forcibly under the present facts, since the proceeds of the mortgage loan were secured in cash and may be thought of as enlarging the total which petitioners received, even though that part was the incident of a prior year. Only when the facts are so peculiar that the mortgage neither constitutes a liability of the seller nor is responsible for a part of the aggregate benefit received can it safely be eliminated from the computation of gain. Cf., e. g., *Beulah B. Crane*, 3 T. C. 585.

Nor does the fact that petitioners mistakenly returned the earlier transaction as a sale alter the necessary outcome. An error of that nature is not susceptible of later correction. *American Light & Traction Co.*, 42 B. T. A. 1121; affd. (C. C. A., 7th Cir.), 125 Fed. (2d) 365. Even if respondent's representative had imparted the facts to petitioners, instead of the other way around, he could not estop the Treasury from demanding its rightful collection. *Agricultural Securities Corporation*, 39 B. T. A. 1103, 1114; affd. (C. C. A., 9th Cir.), 116 Fed. (2d) 800, on authority of *United States* v. *Stewart*, 311 U. S. 60. Administrative remedies may be possible, although in this case that appears extremely doubtful. Sec. 3801, I. R. C. But we may not command them here. The respondent's computation of petitioners' capital gain appears to us to have been correct.

There remains the contention of respondent that petitioners received approximately $10,000 which was in the nature of ordinary income. The amount in question is that which the state court decreed should be credited to petitioners against the mortgage indebtedness as

representing the excess of income received by the mortgagee over interest due him. The real nature of this item is accordingly a species of postponed or delayed income—the net proceeds from the rental of property covering a number of years—which, due to the peculiar circumstances, was received in accumulated form in the tax year in issue. This payment was taxable when received, and it was clearly income, as distinguished from a return of capital. *Swastika Oil & Gas Co.*, 40 B. T. A. 798; affd. (C. C. A., 6th Cir.), 123 Fed. (2d) 382. "Where, as in this case, the disputed amount was essentially a substitute for rental payments which § 22 (a) expressly characterizes as gross income, it must be regarded as ordinary income * * *." *Hort* v. *Commissioner*, 313 U. S. 28. The credit is accordingly subject to tax in full as gross income.

This item is additional to and not in substitution of any part of the capital gain already dealt with. What petitioners did in effect was to receive the substituted rental payments and then, by permitting the mortgagee to retain that sum as a credit against the redemption price, to make what amounted to a curtail or reduction of the principal remaining due on the mortgage. The transaction with their vendee hence took the form of a sale of property subject to a remaining lien of $54,365, instead of the original $65,000. We conclude that petitioners' tax should be computed on $55,764.12 as long term capital gain and on $10,635.33 as ordinary income.

Reviewed by the Court.

*Decision will be entered for respondent.*

SMITH, *J.*, dissenting: If the petitioners had been unsuccessful in their suit in the Florida courts they would clearly not have been taxable upon any gains from the Orlando property in 1939. But they were successful. They obtained a decree from the court which permitted them to recover the property upon a payment to Markell of $54,354.67. If they had paid that amount of money and recovered full title to the property they would not have realized any taxable income from the transaction. They sold whatever rights they had under the decree of the court for a cash consideration of $17,067.67. That is all they received from such sale. How then can it be held that they realized taxable income upon such sale of $66,399.45, a part of which was capital gain and a part ordinary income? How can an actual gain of $17,-067.67 be transmuted into a taxable gain of $66,399.45?

The Tax Court's holding seems to me to be entirely unrealistic. The taxpayers can not have a taxable gain from the sale in 1939 of any greater amount than they actually received, namely, $17,067.67.

The majority opinion intimates that the "petitioners mistakenly returned the earlier transaction [1931] as a sale" of the property in

that year.  I can not agree.  The transaction with Markell took the form of a sale, with an óption to repurchase at a higher price on or before June 15, 1933.  The petitioners were under no obligation to repurchase.  They had no obligation to repay any part of the $65,000 received by them from the vendees.

In *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, it was held:

* * * If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * *

In my opinion gain from the sale of property with an option to repurchase falls in the same category.  *Irving Fisher*, 30 B. T. A. 433; *Resthaven Memorial Cemetery, Inc.*, 43 B. T. A. 683.

Taxation is an eminently practical matter.  Tax laws should be given-a sensible construction.  Incongruous results should be avoided.  Cf. *Dallas Transfer & Terminal Warehouse Co.* v. *Commissioner* (C. C. A., 5th Cir.), 70 Fed. (2d) 95; *Nichols* v. *Commissioner* (C. C. A., 6th Cir.), 141 Fed. (2d) 870.  I can see no practical or just reason for again including in the petitioners' taxable income for 1939 profits which they reported, and I think properly, in 1931.

The taxpayers, I think, should be taxed in 1939 upon only the $17,067.67 profit which they received in that year.

ARUNDELL and DISNEY, *JJ.*, agree with this dissent.