E. J. MURRAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37486.  Promulgated March 31, 1954.

1050

*Frederick H. Torp, Esq.*, for the petitioner.
*G. N. Cromwell, Esq.*, for the respondent.

1056

**OPINION.**

ARUNDELL, *Judge:* This proceeding involves deficiencies for the years 1946 and 1947. The basic issue involved in the controversy

over 1946 concerns the proper basis for determining the gain from stock sold by the petitioner in that year. This matter has now been settled by agreement between the parties and it has been stipulated that the securities had an adjusted basis of $5,000 when they were sold by petitioner. Adjustment of the deficiency for 1946 caused by our decision on the issues concerning 1947 can be effected through a computation under Rule 50.

The principal issue involves the tax treatment of a rather complicated real estate transaction. The history of this transaction is set forth in some detail in our Findings of Fact and we will restate the facts only so far as necessary to point up the question we have for decision.

In 1928, the petitioner [2] owned a parcel of unimproved real estate in Klamath Falls, Oregon. He borrowed $64,000 to construct a building on the property, giving in return a first mortgage. In 1932, petitioner was running behind on his payments on the mortgage, and had accumulated certain other obligations, notably some attorneys' fees. In this year, in temporary satisfaction of the latter, he transferred legal title to the property to a corporation controlled by the attorneys and gave up possession of the property.

The corporation entered into possession but the payments on the mortgage made from rent ran behind and in 1934 the first mortgagee brought suit to foreclose. Foreclosure was obtained in March 1935 pursuant to a decree indicating an unpaid balance on the mortgage of almost $57,000.

The statutory period of redemption in Oregon is 1 year from date of foreclosure. On the last day of the redemption period, the corporation transferred its right of redemption to a third party, hereinafter called the Watters Group, and that group exercised the right to redeem and paid the first mortgagee $63,000 in principal and interest and entered into possession of the premises. This occurred in March 1936. Thereafter, the Watters Group also paid off a Federal income tax lien on the property, another of petitioner's obligations, in the amount of $3,152.95.

In 1938, petitioner instituted suit in an Oregon court to have himself declared legal owner of the property and for an accounting of the rents and profits of the property since he had lost possession. After lengthy litigation, terminating with a judgment of the Supreme Court of Oregon in 1942, it was determined that the petitioner was the legal owner of the property and that the Watters Group were mortgagees in possession, holding the property for the benefit of the petitioner. The court directed that the property be conveyed to the

---

[2] Petitioner and his wife would be exact. However, she has since died and he has succeeded to her interest, and we shall therefore refer throughout only to petitioner.

petitioner subject, however, to the satisfaction of liens in favor of the Watters Group and of the petitioner's attorneys for the amounts expended by them to redeem the property from the first mortgagee, and expenses incurred in operating the property or on account of the petitioner's indebtedness.

Following this decree, it took 5 years and another appeal to the supreme court to settle on an accounting between the litigants. Finally, in January 1947 the Supreme Court of Oregon decreed that, with the payment of $10,640.31 by petitioner to the Watters Group, he should have possession of his property. Petitioner paid this sum into court and entered into possession in February 1947.

From the time he had conveyed the property to his attorneys in 1932 until he regained possession in 1947, none of the rents from the property were paid to petitioner. During all this period, the rents were paid to those who were in possession. The rents were accounted for and applied to the mortgage indebtedness which the Watters Group had paid when they redeemed the property, or to the expenses of operating the property while they were in possession.

Petitioner, who was a cash basis taxpayer during the years in issue, did not file income tax returns for any of the years 1937 through 1945 until after he regained possession of the property. He had no income during these years. In July 1947 he filed separate returns for all the years 1937 to 1946, inclusive, in which he reconstructed the income he would have had from his property in each of those years had he been in possession, taking all the appropriate deductions for taxes, repairs, and depreciation and paying the tax computed on the net business income from the property for each of the years. Then, in March 1948, he filed a return for the year 1947 taking, in addition to deductions for taxes, repairs, and depreciation, a deduction of $19,-575.80 for interest which he had been charged in the accounting to the Watters Group on disbursements which they had made while in possession and for which he had no offsetting interest credits.

The Commissioner determined that, as a result of the foregoing transactions, the petitioner realized ordinary income of $57,512.64[3] in 1947, that attorneys' fees and court costs of $10,042.09 incurred in the litigation between 1938 and 1947 were not deductible as ordinary and necessary business expenses, that certain taxes paid to the State

[3] The respondent's conclusion that petitioner received $57,512.64 in ordinary income in 1947 was determined as follows: The gross rents from the property for the entire period petitioner was deprived of possession amounted to $102,589.45. Interest on these rents allowed petitioner in the accounting amounted to $33,218.74, resulting in total gross receipts recognized of $135,808.19. Against these credits, petitioner was charged with expenses of maintenance in the amount of $25,501.01, and interest on the mortgage, and the other disbursements amounting to $52,794.54, or an aggregate charge of $78,295.55. Subtracting these offsets from the credits above ($135,808.19 − $78,295.55) the Commissioner determined that the effect of the litigation and the accounting as shown above resulted in ordinary income to petitioner in the amount of $57,512.64.

of Oregon by petitioner were not deductible,[4] that petitioner was not entitled to deduct depreciation on the property for the period he was not in possession, and that petitioner could not deduct the entire interest charge of $19,575.80 in the single year 1947, if he were allowed to reconstruct his income and deductions, year by year, for the period he was out of possession. (However, the respondent would allow the petitioner to deduct the full amount of the interest charge in the single year 1947 if it were held that the full amount of net income realized by petitioner were taxable in that year.)

The petitioner contends that he did not realize income from the litigation which restored his building to his possession. To the contrary, he argues that at the termination of the litigation and the accounting proceeding, he received no money; indeed, he had to pay the defendants $10,640.31 to obtain possession of the property in 1947. Moreover, during all the years he was out of possession, he had not constructively received any money or benefit, and no personal liability had been relieved by the litigation.

Secondarily, the petitioner contends that, if he did realize income from the litigation and the accounting proceeding, then the time of realization was in 1942—the date of the first judgment in the Oregon Supreme Court—when it was conclusively established that he was entitled to reconveyance of the property. That decision, petitioner argues, established the legal relationships between the litigants and the accounting proceeding could not upset those relationships.

As a third alternative, petitioner argues that assuming that he realized income from the litigation which successfully put him back in possession of his property, then the rental income was constructively received by him in each year from 1942 to 1947 during the pendency of the accounting proceeding during which time it had been determined that he was entitled to reconveyance of the property.

Petitioner, of course, contends that the full amount of the attorneys' fees incurred in the litigation is deductible as an ordinary and necessary expense and also that the interest for which he had no offsetting credit should be deductible in full in the single year 1947 even though it should be held that he constructively realized income from the property in 1942, or in the period 1942 through 1946, and that he is entitled to a deduction for depreciation during the years he was not in actual possession.

We think that without question the petitioner realized income from his property when he was restored to possession. In the accounting procedure, he was credited with $135,808.19 in rent and interest on the rent for the period from 1936 until 1947 during which time he was out of possession. There would be no doubt that, had he been in

---

[4] Respondent has now conceded that these taxes are deductible.

possession during this period, and had actually received the rents, he would have been required to return them as ordinary income—offset, of course, by permissible deductions. The fact that the rents were realized only after great delay and then through the medium of a judicially ordered accounting proceeding does not change the character of rent from a tax viewpoint. Cf. *Palm Beach Aero Corporation*, 17 T. C. 1169.

The petitioner relies on *Hilpert* v. *Commissioner*, (C. A. 5) 151 F. 2d 929, in arguing that the net proceeds of the accounting proceeding were not income. However, when that case was before this Court, we held that the excess of income received by the mortgagee in possession over the expenses and interest due him was ordinary income to the taxpayer-mortgagor in the year in which the litigation was terminated. We said, "The real nature of this item is * * * a species of postponed or delayed income—the net proceeds from the rental of property covering a number of years—which, due to the peculiar circumstances, was received in accumulated form in the tax year in issue. This payment was taxable when received, and it was clearly income * * *." *Anna I. Hilpert*, 4 T. C. 473, 477.

There were circumstances in the *Hilpert* case which influenced the fifth circuit considerably in reversing our decision in that case. For example, Hilpert had treated the original transfer of the property to his mortgagee as a sale and had paid a tax accordingly. He also sold the property after having successfully contended before the Florida courts that the original transfer was a mortgage and not a sale, and he paid another tax on that transaction. The fifth circuit observed that the practical effect of our decision was to tax the same sale twice. The facts which influenced the court of appeals in the *Hilpert* case are absent in the instant proceedings and we do not think that that decision should be regarded as at all binding on us. It is our opinion that the net proceeds realized by the petitioner in the accounting proceeding were income and, moreover, that they were taxable in the year they were ultimately realized, 1947. *Swastika Oil & Gas Co.*, 40 B. T. A. 798, affd. 123 F. 2d 382.

We think that there is little merit to petitioner's contention that, assuming he realized income from the litigation, then the year of realization was 1942 or, alternatively, each of the years between 1942 and 1947. The basic premise of these arguments is that the petitioner had constructive receipt of the rent from his property after the Supreme Court of Oregon decided in 1942 that the Watters Group were mortgagees in possession, holding the property for the benefit of the petitioner. However, the petitioner was still out of possession until the conclusion of the accounting proceeding, and he had no control over the rents until he ultimately satisfied the balance in favor of the

mortgagees and nothing was set aside for petitioner or available to him from the rents received during these years.

It may be true that during the period from 1942 to 1947, the Commissioner could not have demanded that the mortgagees return a tax on the net income from the property. *Penn Athletic Club Building*, 10 T. C. 919, affd. (C. A. 3) 176 F. 2d 939. But it does not necessarily follow that, therefore, the Commissioner could have demanded a tax from the petitioner in these years on the net rents from the property. The petitioner could not have been compelled to pay a tax on something that he might never receive. Until the accounting proceeding was actually terminated, there was no definitive apportionment of the income from the property between the petitioner and the mortgagees in possession, and petitioner had no right to demand payment of the rents from the property and convert them to his own use. Therefore, we conclude that petitioner was not in constructive receipt of the rents from his property during the period involved in the accounting.

The remaining issues can be simply handled. The respondent now agrees that petitioner is entitled to deduct the sum of $1,101.32 for the taxable year 1947 which was paid in income taxes to the State of Oregon on June 13, 1947. Interest in the amount of $19,575.80 is properly deductible for the taxable year 1947, and respondent in his determination of the deficiency for that year has in effect allowed this amount in computing the net amount of $57,512.64 realized by the petitioner. Two issues remain. Each concerns additional deductions requested by the petitioner for (1) attorneys' fees incurred in the litigation to obtain possession of his property, and (2) depreciation on the property for the years he was out of possession.

Petitioner expended $10,000 in attorneys' fees and $42.09 in court costs in the litigation to obtain possession of the Murray Building. These fees were paid in 1947 when the lawsuit was finally concluded, and deducted in that taxable year as an ordinary and necessary expense. The respondent has disallowed the deduction, contending that the entire expense of the litigation should be capitalized. Petitioner suggests that if he is not entitled to deduct the full amount of legal expense, then part of it should be allocated to expense on the basis of a formula which would relate the time required for the accounting proceeding to the entire period required for the litigation. In the peculiar circumstances of this case, we think that an allocation is appropriate. Approximately one-half the entire period spent in litigation was devoted to the accounting proceeding after petitioner's right to the property had been conclusively determined. Accordingly, we conclude that one-half of the legal expenses may be deducted in the taxable year 1947, and the remaining one-half should be capitalized.

The accounting proceeding was concluded on February 28, 1947, when petitioner paid $10,640.31 into court and went into possession. The respondent would allow petitioner to deduct depreciation, at the rate of $2,347.62 annually, for only the 10 months of 1947 subsequent to petitioner's reentry. Respondent would also not permit a deduction for depreciation in any of the years that petitioner was not in possession.

Respondent's position is that before the reentry in February 1947, the Murray Building was not property "held" by the petitioner for the production of income within the meaning of section 23 (a) (2) of the Internal Revenue Code.

We think that petitioner is entitled to depreciation on the property for the years he was out of possession. We have previously held that the right to deduct for depreciation does not absolutely depend upon the holding of legal title to a depreciable capital investment. There are situations where the taxpayer who retains an equitable interest in his capital investment is entitled to depreciate it though legal title may be in another party for security purposes. *F. & R. Lazarus & Co.*, 32 B. T. A. 633, affd. (C. A. 6) 101 F. 2d 728; affd. 308 U. S. 252; cf. *Marion A. Blake*, 8 T. C. 546.

Certainly the building was petitioner's investment in the beginning. Moreover, at least from the time of the decision of the Supreme Court of Oregon in 1942 establishing petitioner's right to reconveyance, he had an equitable interest in the property. The fact that legal title was continued in the mortgagees in possession pending the settlement of an accounting for the rents received by them really meant in substance that they held the property only as security for the expenditures they had incurred in redeeming the property and in maintaining it. After the 1942 decision we think that petitioner was entitled to deduct depreciation on the building, even though he was not actually in possession.

However, in this proceeding, we can give full effect to petitioner's right to deduct depreciation only to the taxable years 1946 and 1947. Depreciation allocable to previous years can only be allowed insofar as it may affect the taxes for the 2 years before us. *Frank Holton & Co.*, 10 B. T. A. 1317. There will be some effect since petitioner had no income in the years 1944 and 1945 and allowance of depreciation for those years would give him loss carry-overs applicable to 1946 and 1947. The parties have recognized these principles and agree that, in a computation under Rule 50, effect can be given to these loss carry-overs against the taxes for 1946 and 1947. As we indicated in our findings, the annual rate of depreciation to be allowed petitioner is $2,347.62.

*Decision will be entered under Rule 50.*