Daniel S. W. Kelly and Constance L. Kelly v. Commissioner.
Kelly v. Commissioner
Docket No. 52973.
United States Tax Court
T.C. Memo 1957-7; 1957 Tax Ct. Memo LEXIS 247; 16 T.C.M. (CCH) 34; T.C.M. (RIA) 57007; January 15, 1957
Harvey W. Peters, Esq., 1308 North Prospect Avenue, Milwaukee, Wis., and Dudley J. Godfrey, Jr., Esq., for the petitioners. John E. Owens, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined a deficiency in income tax for 1950 in the amount of $2,116.66, and an addition to tax under section 294(d)(2), 1939 Code, in the amount of $211.96. One of the issues has been disposed of by the parties under a stipulation. It is agreed that the petitioners are entitled to a deduction for a casualty loss in the amount of $28, only, and that they are not entitled to a deduction of $96. Effect will be given to the stipulation under Rule 50. The issues to be decided are as follows: (1) Whether this Court has jurisdiction to hear and decide *250 this case. (2) Whether $2,993.91, a one-half interest in rents for the period 1934 to 1950, received in 1950 as a result of a lawsuit, is includible in petitioners' income for 1950; and if the rents are includible in petitioners' income for 1950, whether petitioners are entitled to a deduction in 1950 for depreciation during the years 1934 through 1950, on the property from which the rents were received. (3) Whether petitioners are entitled to deductions of $2,502.81 and $642.83, for attorneys' fees and travel expenses, respectively, expended during 1950 in connection with a lawsuit. (4) Whether petitioners are subject to additions to tax under section 294(d)(2), 1939 Code. Findings of Fact Petitioners, husband and wife, are residents of Milwaukee, Wisconsin. The petitioners filed a joint income tax return for the year 1950 with the collector of internal revenue for Wisconsin. The issues to be decided relate to the petitioner, Daniel S. W. Kelly, only, and therefore, he is sometimes referred to hereinafter either as the petitioner or as Kelly. Petitioner reports his income on the cash basis and for a calendar year. Issue 1. The Commissioner mailed to petitioners a statutory *251 notice of deficiency upon which his name was typed but it was unsigned, by a district director of internal revenue or any other representative of the Commissioner. It is in the usual form of a statutory deficiency notice, it has the statement giving the details of the Commissioner's determinations and explanations thereof, and it is complete in all respects, to the extent that the notice and statement customarily set forth explanations of determinations. This notice apprised petitioners of all they needed to know in order to file a petition in this Court. From this deficiency notice, petitioners timely filed the petition, giving designation of Docket No. 52973, which gives rise to this proceeding, and made written request that it be put upon a trial calendar, in accordance with Rule 26(a) of the Court's Rules of Practice. Petitioners did not file any motion to dismiss this proceeding for lack of jurisdiction. Several months after the petition was filed, petitioners filed an amended petition. Petitioners presented evidence during the trial of this proceeding, and they have presented arguments on brief. The Commissioner subsequently mailed petitioners a second deficiency notice determining *252 the same deficiency for the calendar year 1950, and the same addition to tax under section 294(d)(2), 1939 Code. The second notice is identical with the first, unsigned notice. The second notice was signed by a district director of internal revenue. From the second deficiency notice, petitioners filed another petition in this Court, identical with the first petition, which was given the designation of Docket No. 54692. Thereafter each party in Docket No. 54692 filed a motion relating to the proposed dismissal of Docket No. 54692, but the Court on its own motion placed that proceeding upon the Court's reserve calendar pending the disposition of this proceeding. Issue 2. On March 27, 1946, petitioner filed a complaint in the Sixth Judicial Circuit Court of South Dakota, commencing suit against his sister, Ilma Kelly Gram, and her husband, Robert W. Gram. The complaint asked for a decree adjudging petitioner to be the owner of an undivided one-half interest in certain personal property and certain real properties located in Hughes, Stanley, and Haakon Counties, South Dakota, for an accounting, and for award of amounts paid by petitioner on mortgages against the real properties and *253 for purchase of one of the properties. The South Dakota Circuit Court filed its judgment on June 17, 1947, showing that the case had been tried on March 27, 1946, in Pierre, South Dakota. The South Dakota Court found as facts that on May 25, 1929, and for more than 10 years prior thereto, Robert L. Kelly, the father of petitioner and his sister, owned certain real properties in Hughes, Stanley, and Haakon Counties, South Dakota; that on May 25, 1929, Robert L. Kelly conveyed these real properties to petitioner's sister, Ilma; that on June 21, 1944, Ilma conveyed the realty, through an intermediary, to herself and her husband, as joint tenants; that on June 28, 1929, Robert L. Kelly executed a bill of sale to Ilma for personal property consisting of photographic equipment, furniture, etc.; that on June 18, 1930, Robert L. Kelly purchased an additional piece of real property in Pierre, South Dakota, for $5,250, and conveyed this additional piece of realty to Ilma on July 10, 1930; that during the period from 1930 to 1936, petitioner had advanced amounts towards purchase of the realty in Pierre and towards repayment of mortgages on the various real properties, and that part of the advances *254 had been repaid to petitioner out of rents accruing on the properties, in payments made during the period from December 27, 1936 to August 25, 1939; and that there was no agreement whereby Ilma was to hold any part of the property received from her father in trust for petitioner. The court gave petitioner judgment in the amount of $6,311.45 for the balance of the amount of advances he had made to purchase property and to repay mortgages on the real properties held by Ilma, with interest thereon, but refused to declare that petitioner was entitled to an undivided one-half interest in the properties or to grant an accounting. Petitioner filed an appeal to the Supreme Court of South Dakota, and in an opinion filed on July 19, 1949, the Supreme Court of South Dakota reversed, in part, the judgment of the lower court. Kelly v. Gram, 73 S.D. 11, 38 N.W. 2d 460. The issues in the Supreme Court of South Dakota were whether petitioner was entitled to an undivided one-half interest in the properties received by Ilma from Robert L. Kelly, and to an accounting for the profits received therefrom. The court said that if petitioner had proved that Ilma expressly agreed to hold title *255 to one-half of the property as trustee for him, it would establish the existence of a constructive trust, but that the trial court had not believed petitioner's evidence as to the making of such a promise and the Supreme Court would not overturn the trial court's finding of fact. However, the Supreme Court, on the basis of evidence and findings in the trial court showing that Ilma had represented to petitioner that she held an undivided one-half interest in the properties in trust for him and that petitioner had acted in reliance thereon to his determient, concluded that Ilma was estopped from denying that she held title to one-half of the property in trust for petitioner. There was no issue in the case of Kelly v. Gram, supra, as to whether or not petitioner and his sister were engaged in a joint venture, and neither the trial court nor the Supreme Court made any findings or stated any conclusions as to this issue. Following the filing of the opinion of the Supreme Court, the case was remanded to the Circuit Court. Thereafter, the plaintiff and the defendants in that case entered into a stipulation of settlement, on the basis of which the case was dismissed. The *256 stipulation of settlement was not introduced into evidence in this proceeding, but a receipt given by Kelly to his sister and her husband pursuant to the settlement, has been received in evidence. Kelly received in settlement of the action, the following: (1) Special warranty deeds transferring and conveying to petitioner an undivided one-half interest in various properties in Hughes, Stanley, and Haakon Counties, South Dakota, including some improved rental properties in the cities of Pierre and Phillip, 480 acres of unimproved grazing lands near Fort Pierre and various unimproved plats. These real properties had a total value of $15,000. (2) A bill of sale transferring and conveying an undivided one-half interest in personal property consisting of photographic equipment, furniture, etc., of a nominal value. (3) The sum of $11,129.57, consisting of $3,059.77 as repayment of advances for purchase of real estate and repayment of mortgages, $4,514.34 as interest on the advances, $1,312.43 as one-half of the balance of a joint bank account in which rents from the real properties had been deposited until Ilma closed the account in 1942, $1,681.48 as rents received on the properties from *257 1942 through 1949, and $561.55 as court costs. Of the sum of $11,129.57 received by petitioner in settlement of the suit, the amount of $2,993.91 is in controversy in the present proceeding. The latter figure consists of $1,312.43 which was rents that had been deposited in a joint bank account, and $1,681.48 which was rents that had been received by Ilma subsequent to her closing of the joint account in January 1942. At Christmas of 1928, petitioner, Daniel S. W. Kelly, visited his father, Robert L. Kelly and his sister, Ilma Kelly Gram, at Pierre, South Dakota. Robert L. Kelly was then 78 years old, and in ill health. He was concerned to dispose of his property to his children in such a way that Daniel's wife, from whom he was then separated and later divorced, would not be able to get any of the property. It was agreed between Robert, Daniel, and Ilma, that Robert would convey his real and personal property to Ilma, but that the profits would be shared between Daniel and Ilma, and that after Daniel had obtained a divorce, Ilma would convey an undivided one-half interest to him. The rents from the realty were to be placed in a joint bank account; expenses of the father's estate *258 and operation of the properties were to be paid out of the account and then the proceeds were to be divided equally between Daniel and Ilma. In 1929, Robert executed deeds conveying all his real property to Ilma. The deeds were not recorded. Later he executed a bill of sale conveying his personal property to Ilma. In 1930, Robert purchased an additional piece of real property and conveyed it to Ilma by an unrecorded deed. Robert kept possession of the deeds and bill of sale and exercised complete control over all the real and personal property, until his death in 1934 at the age of 84. Shortly after their father's death, Daniel and Ilma had the deeds recorded and filed the bill of sale. They opened a joint bank account in Pierre, South Dakota, and they engaged the president of the bank as an agent to manage the real properties. The agent deposited the rents from the properties in the account. From time to time, Ilma withdrew moneys from the account, kept part for herself, and sent part to Daniel. However, in January 1942, she closed the account and appropriated all of the funds therein to her own use. Thereafter, she appropriated all of the rents received on the properties to her *259 own use and sent none to Daniel. In 1944, she conveyed the real property, through an intermediary, to herself and her husband as joint tenants. Petitioner learned of the conveyance and the closing of the joint bank account, and in 1945 he began the lawsuit referred to above. The real properties in which petitioner received an undivided one-half interest in settlement of the lawsuit, were as follows: (1) A lot on Pierre Street, in Pierre, Hughes County, South Dakota, improved with a one-story frame building containing a jewelry store and a barbershop. The structure was about 15 or 20 years old in 1950. The record does not show the purchase price or date of purchase of the lot. (2) An adjacent lot on Pierre Street, improved with a onestory frame structure containing a restaurant and dry cleaning establishment. The structure was about 10 years old when the lot was purchased by Robert for $5,200 in January 1930. (3) A lot on the main street of Phillip, Haakon County, South Dakota, improved with a two-story brick building containing two stores on the first floor and offices on the second floor. The lot was purchased for $5,500 by Robert in 1919, and the building had been constructed thereon *260 in 1909. (4) Two lots in other parts of Pierre, containing a store and a residence, respectively. (5) 480 acres of unimproved grazing land, plus a large number of unimproved plats, in Stanley County, near Fort Pierre, South Dakota. The grazing land was rented for taxes and the plats were not rented. There is no basis shown in the record, on which the purchase price for any of the improved properties can be allocated between land and buildings. At the time that Robert L. Kelly purchased the second lot and building on Pierre Street, in January 1930, part of the price was raised by mortgages placed on the purchased property and on the adjacent property which he already owned. Daniel advanced part of the purchase price in January 1930, and he later advanced funds to repay the mortgages. His advances totaled $5,200. For the year 1947, the Commissioner made determination of a deficiency in the income tax liability of the petitioner, from which he filed a petition in this Court, Daniel S. W. Kelly, Docket No. 37943. Our Findings of Fact and Opinion are reported as *261 Daniel S. W. Kelly, 23 T.C. 682. One of the issues in that case involved the suit brought by petitioner in the circuit court of South Dakota, described above. From adverse holdings in this Court, petitioner filed an appeal in the United States Court of Appeals for the Seventh Circuit. The Court of Appeals affirmed the determination of this Court in Kelly v. Commissioner, 228 Fed. (2d) 512 (Jan. 4, 1956). In the present proceeding, the parties have stipulated as follows: The petitioner in the proceeding entitled Daniel S. W. Kelly v. Commissioner ( Docket No. 37943), 23 T.C. 682, affirmed (C.A. 7, 1956) 228 Fed. (2d) 512, is the same Daniel S. W. Kelly who is one of the petitioners in the instant case; that said Docket Number 37943 and the instant case involve common issues of law and fact; and that the entire record of said earlier proceeding bearing Docket Number 37943, both in this Court and in the Court of Appeals, including all pleadings, testimony, evidence, briefs and papers filed therein, is incorporated herein by reference. Issue 3. During the year 1950, petitioner expended $642.83 in travel expenses in connection with *262 the prosecution of Kelly v. Gram, supra, in the Supreme Court of South Dakota. During the year 1950, petitioner expended $2,502.81 in legal fees in connection with the prosecution of that case. The $2,502.81 represented payments on account and did not constitute the total legal fees paid by petitioner in connection with the prosecution of his suit against his sister, first in the court for the Sixth Judicial Circuit of South Dakota, and then in the appeal taken to the Supreme Court of South Dakota. In our findings of fact in Daniel S. W. Kelly, 23 T.C. 682, we determined that petitioner expended in 1947, $1,823.75 in legal fees and $407.35 in travel, hotels, meals, and incidentals, for himself, his wife and his attorneys, in connection with the litigation in the Circuit Court of South Dakota, but that no part of these amounts was expended in connection with the appeal to the South Dakota Supreme Court. One of the issues in Daniel S. W. Kelly, supra, was whether the total amount of $2,231.10 expended for attorneys' fees and expenses in the litigation in the Circuit Court of South Dakota was deductible under section 23(a)(2), 1939 Code. In the *263 previous case, supra, petitioner did not argue that the expenses were deductible under any other section of the Code, and there was no issue before the Court as to whether the expenses were deductible under any section other than 23(a)(2). We concluded in the previous case that so much of the expenses and legal fees as were allocable to recovery of interest and rents were deductible, but that so much as were allocable to recovery of loan principal and determination of title were not deductible. So allocating the legal fees and expenses, we allowed deduction of $600 in 1947. Petitioner and his sister did not file form 1065, a partnership return of income, for any of the years 1934 to 1950, inclusive. Petitioner and his sister were not engaged in a joint venture or partnership during those years. Of the total amount of $3,145.64 expended in 1950 for legal fees and expenses in connection with the Kelly v. Gram litigation, $850 represents expenditures to recover rental and interest income. Issue 4. Petitioners duly filed a declaration of estimated tax for the taxable year 1950 and made payments as follows: Mar. 27, 1950
$37.50
June 9, 1950
37.50
Sept. 13, 1950
37.50
*264 Petitioners filed their income tax return for 1950 on January 15, 1951, and paid the tax shown due thereon. They considered this return to be an amendment to their declaration of estimated tax and respondent has so treated it. On their return filed January 15, 1951, petitioners showed a total tax in the amount of $5,527.28. The facts which have been stipulated by the parties are found as stipulated; the stipulations of facts are incorporated herein by this reference. Opinion Issue 1. - Jurisdiction: It is an unusual situation that two deficiency notices were issued to petitioners by the Commissioner but this situation does not present any real difficulty. As for this proceeding, arising from the petition timely filed after the mailing of a timely issued statutory notice of deficiency upon which the Commissioner's name is typed but which was not signed by the district director of internal revenue, petitioners elected to go to trial. Their counsel do not argue strongly that this Court does not have jurisdiction over this proceeding and they do not cite any case in support of their contention. On the other hand, respondent relies upon *265 Commissioner v. Oswego Falls Corp., 71 Fed. (2d) 673, affirming 26 B.T.A. 60 for the proposition that the deficiency notice from which this proceeding was instituted is a valid notice within section 272(a)(1), 1939 Code. The Oswego Falls Corporation case controls the question. The notice was sent by the Commissioner of Internal Revenue and the petitioners invoked the jurisdiction of this Court and acted pursuant thereto. The statute does not require that the notice be signed. It is held that this Court has jurisdiction, under section 272(a)(1), 1939 Code, to hear and decide this case. See, also, Noyes v. United States, 55 Fed. (2d) 870. The second petition filed in this Court by the petitioners, Docket No. 54692, after receipt of the second notice of deficiency which was signed by a district director of Internal Revenue, has been placed upon this Court's reserve calendar awaiting decision of this case. In that proceeding, each party has filed motions upon which the Court has not taken action pending the disposition of this case. Unless the parties shall consider it necessary to appear to present arguments about their respective motions, after *266 decision has been entered in this case, they may file, after decision here is entered, a joint motion for dismissal of Docket No. 54692 upon the appropriate grounds. It is not anticipated that dismissal, upon the appropriate grounds, of the second proceeding will in any way jeopardize the interests of either the taxpayer or the Commissioner after decision in this case has been entered. Issue 2. Rental Income and Depreciation. In 1929 and 1930, petitioner's sister, Ilma Kelly Gram, received deeds to certain rental real properties in South Dakota, from their father, Robert Kelly, with the understanding that the rents from the properties were to be used to pay expenses and then divided equally between petitioner and his sister. After the death of Robert Kelly in 1934, Kelly and his sister had the deeds recorded, and they opened a joint bank account in Pierre, South Dakota. The properties were managed by an agent who deposited the rents in the joint bank account. Ilma withdrew moneys from the account and sent part to Kelly. However, in January 1942, she closed the joint account and appropriated all of the funds therein. Thereafter, she appropriated all of the rents from the properties, *267 and in 1944, she transferred title, through an intermediary, to herself and her husband as joint tenants. During the period 1930 to 1942, petitioner advanced funds which were used in the following way: While his father was alive, he contributed money used in the purchase of an improved piece of real estate in Pierre, South Dakota. Also, petitioner subsequently advanced some money to discharge a mortgage on the above piece of property. In addition, petitioner advanced some money which was used to discharge a mortgage on another piece of property in Pierre. In 1945, petitioner brought suit against Ilma and her husband. The trial court allowed him recovery only of the balance of his advances with interest. Kelly appealed, and in 1949, the Supreme Court of South Dakota held that Ilma was estopped to deny that she held title to an undivided one-half interest in the properties in trust for Kelly. Kelly v. Gram, 73 S.D. 11, 38 N.W. 2d 460. Pursuant to a stipulation of settlement, petitioner received in 1950, the sum of $2,993.91 as his one-half share of rents received on the properties during the period from 1934 through 1949. This sum was composed of $1,312.42 as Kelly's *268 one-half share of the joint bank account closed by Ilma in January 1942, and $1,681.48 as Kelly's one-half share of the net rental income from the property during 1942 through 1949. Petitioner reports his income on the cash basis. Respondent asserts that the amount of $2,993.91 in rental income is includible in petitioner's income for 1950. Petitioner argues that the rents were includible in his income for 1934 through 1949 and are not includible in his income for 1950. Alternatively, if the rents are includible in his 1950 income, petitioner claims a deduction for that year in the amount of $2,351.08 as onehalf of the depreciation on the rental properties during the period 1934 through 1949. Upon brief, he reduced his claim for depreciation to $1,512.50. Petitioner's argument is that he was engaged in a joint venture with his sister during the period 1934 through 1949, in connection with the operation of the rental properties, that section 3797(a)(2), [1]1939 Code, defines a joint venture as a partnership, and that since under section 182(c), [2] a partner must report partnership income "* * * whether or not distribution is made to him * * *", the rents as "partnership" income *269 during the years 1934 through 1949, were includible in his income as a partner during those years, and are not includible in his income for 1950. Petitioner's argument is without merit. His contention that he and Ilma were joint venturers is predicated on an assumption that they owned the property as joint *270 tenants. However, joint tenancy is a form of ownership of property, and section 3797(a)(2) refers to a joint venture as a means of carrying on a business. See Estate of Edgar S. Appleby, 41 B.T.A. 18, 20, 21, affd. 123 Fed. (2d) 700. The term "joint tenancy" is not co-extensive with the term "joint venture." Moreover, under South Dakota law, the property was owned not as a joint tenancy but as a tenancy in common. South Dakota Code of 1939, sections 51.0212, 51.0213, and 51.0214[3] provides that a joint tenancy exists only where the interest in both tenants is created by the same instrument and the instrument expressly declares the interest to be a joint tenancy. The conveyances by Robert L. Kelly to Ilma created no interest in petitioner, but his rights in the properties resulted from a separate oral agreement. Petitioner does not contend that the interest in the properties was a partnership interest under state law. A joint tenancy requires the existence, between the rights of the tenants, of the four unities of interest, title, time and possession, while a tenancy in common requires the existence only of unity of possession. 2 Tiffany, Real Property, *271 sections 418 and 426. There was no unity of interest and title between the rights of petitioner and Ilma, because her rights were legal and his were equitable, and their rights were not created by the same instrument. Therefore, under state law, the form of ownership of the properties was a tenancy in common. *272 There is no evidence of any intention on the part of petitioner and his sister to enter into a joint venture or a partnership, and their method of operating the properties was not that of a joint venture or partnership. Handling the income and expenses of the properties through a joint bank account does not constitute the operation a joint venture, and the mere owning of properties as tenants in common does not constitute the owners joint venturers or partners. Estate of Edgar S. Appleby, supra; Lena Hahn, 22 T.C. 212; Coffin v. United States, 120 Fed. Supp. 9; Gilford v. Commissioner, 201 Fed (2d) 735. Petitioner relies on United States v. Baker, 233 Fed. (2d) 195, affirming 133 Fed. Supp. 666. In that case, Baker had recovered a judgment in United States District Court, from Kasishke, in the amount of $168,559.12, as his share of the profits of an oil business in the years 1941 to 1944, inclusive. The judgment was affirmed in Kasishke v. Baker, 146 Fed. (2d) 113, in 1945, on the ground that the District Court had been justified in finding that Baker and Kasishke were engaged in a joint venture. *273 Baker received the amount of the judgment in 1945. In United States v. Baker, supra, it was held that the proceeds of the judgment were not includible in the taxpayer's income for 1945 but were includible for the years 1941 to 1944, inclusive. That case is not controlling here. There, the taxpayer had recovered profits for past years on the theory that he had been engaged in a joint venture during those years. In the case at bar, petitioner's recovery of rents for past years was based upon the theory that his sister, the defendant in Kelly v. Gram, supra, was estopped to deny that she held title to one-half the rental properties in trust for petitioner. In regard to the amount of $1,681.48 recovered by Kelly in 1950 as his one-half share of rents received on real properties by his sister during the period 1942 through 1949, this amount comes within the rule of cases holding that where a disputed sum is recovered as the result of litigation, it is includible in income of the year recovered and not within the income of the years in which it accrued. *274 North America Oil Consolidated v. Burnet, 286 U.S. 417; London Butte Gold Mines Company, 41 B.T.A. 852, affd. 116 Fed. (2d) 478; Lee McRitchie, 27 T.C. - (Oct. 19, 1956). The rents could not have been included in petitioner's income for 1942 through 1949, because at that time his right to them was disputed and not yet fixed. He could not obtain the rents until after completion of the litigation in 1950, because prior to that time his sister, who had received the rents, claimed them as her own. The amount of $1,312.42 recovered by Kelly in 1950 as his one-half share of funds in the joint back account closed by Ilma in January 1942, which consisted of rents received on real properties during the period 1934 to 1942, presents a different problem. The rents for that period were placed in the account by an agent, as they were collected. Ilma did not dispute petitioner's right to one-half of these rents at the time they were collected, but she later appropriated them to her own use. This amount comes within the rule that a cash basis taxpayer must include income in the year in which received. Sec. 42. [4] Petitioner has not argued that he constructively *275 received rents during 1934 to 1942, and the evidence affords no ground for such an argument. Kelly had no right to receive the rents directly from the agent who managed the properties, because the agreement between him and Ilma was that the agent was to deposit the rents in the joint bank account. There is no showing that petitioner could withdraw moneys from the account. He never did so; Ilma made all withdrawals. *276 In E. J. Murray, 21 T.C. 1049, affd. 232 Fed. (2d) 742, the petitioner had been decreed, in an Oregon Court, to hold an equity of redemption in real property which was in the possession of persons holding liens on the property. Upon an accounting, he had been credited with net rents for the period 1937 to 1946, inclusive, and interest thereon, in the amount of $57,512.64, towards satisfaction of the liens. He redeemed the property and obtained possession, by paying the balance of the liens, in February 1947. We held that the taxpayer realized income in 1947 in the amount of $57,512.64, the net rent and interest for 1937 to 1946, inclusive, with which he had been credited in the accounting. Upon the authority of E. J. Murray, supra, it is held that Kelly realized income from rents in 1950, in the amount of $2,993.91. Petitioner argues that if rents for the years 1934 through 1949 are included in his income for 1950, he should be allowed to deduct, in 1950, depreciation on the rental properties for 1934 through 1949. In *277 E. J. Murray, supra, rents for the years 1937 through 1946 were included in the taxpayer's income for 1947, and he sought to deduct, in 1947, depreciation for 1937 through 1946. We held that depreciation for past years could not be deducted in 1947. Depreciation deductions for prior years, which were not taken in the prior years, cannot be taken in the current year. Van Norman Machine Tool Co., 1 B.T.A. 1187; Fort Orange Paper Co., 1 B.T.A. 1230; Motor Car Supply Co., 9 B.T.A. 556. It follows that Kelly may not deduct, in 1950, depreciation for 1934 through 1949. It is so held. The question remains whether petitioner can be allowed depreciation for the year 1950, which is now before the Court. As to this petitioner has failed in his burden of proving that an amount of depreciation is allowable. It is held, for failure of proof, that a deduction for 1950 depreciation is not allowable. Petitioner claims depreciation on three buildings. Two are adjacent one-story frame structures containing two stores each, on Pierre Street, Hughes County, South Dakota. The third is a two-story brick structure, containing two stores on the first *278 floor and offices on the second floor, on the main street of Phillip, Haakon County, South Dakota. Other real property involved in the Kelly v. Gram litigation included a store and a residence in Pierre, but no depreciation is claimed on these. The remainder of the realty involved was 480 acres of unimproved grazing land and various unimproved plats in Stanley County, South Dakota. As to one of the Pierre properties on which depreciation is claimed, the record does not show its purchase price or age, and the amount of depreciation is clearly not proven as to this property. As to the other Pierre property and the Phillip property, their ages and the purchase prices of the lots are shown, but there is no basis on which the prices can be allocated between land and buildings. Moreover, petitioner has introduced no evidence to show the useful lives or salvage values of the buildings. See Vogue Silk Hosiery Co., 27 B.T.A. 131. On brief, petitioner suggests the use of a depreciation rate of 2 1/2 per cent, by reference to respondent's Bulletin "F" [5]. The depreciation rates set forth in Bulletin "F" are intended only as a guide; they cannot be arbitrarily applied here in the *279 absence of proof of the necessary facts. Furthermore, there is nothing to show that the buildings were not fully depreciated prior to 1950. Issue 3: Costs of Litigation. The question under this issue is whether petitioner is entitled to deduct attorneys' fees in the amount of $2,502.81 and traveling expenses in the amount of $642.83 which were incurred in connection with the litigation instituted by petitioner against his sister, Ilma Gram, in South Dakota. In particular, the legal fees in question were incurred in connection with the appeal to the Supreme Court of South Dakota. The traveling expenses involved travel from Milwaukee to Pierre, South Dakota. Both classes of expenses were paid in the taxable year. In the petition and on brief, deductions for both of these expenditures were claimed under section 23(a) and, in the alternative, under section 23(e). Respondent disallowed deduction of the entire amounts involved. However, on brief, respondent now takes the position *280 that part of the expenditures properly can be allocated to the recovery of income, following the decision of this Court in the prior case of the petitioner, Daniel S. W. Kelly, 23 T.C. 682, affd. 228 Fed. (2d) 512. In the former case of the petitioner, this Court held (p. 688) that similar expenses could be allocated to the recovery of income and consequently deducted as ordinary and necessary expenses incurred in the production of income. Upon the facts in the earlier case, this Court determined that a certain amount, namely, $600, represented a reasonable allocation of the total legal fees and expenses to the recovery of income and allowed deduction of that amount. We did not state that we were applying any particular percentage in arriving at this amount. Rather consideration was given to the evidence, and the doctrine of Cohan v. Commissioner, 39 Fed. (2d) 540 was followed. The respondent now states his position to be in this case, that it is proper to allocate $850 to the recovery of income and he concedes that this amount is deductible as an ordinary and necessary expense for the production of income. [6]
*281 Relying on the determination of this Court in Daniel S. W. Kelly, supra, respondent contends that no deduction should be allowed for costs of determining title to the property involved in the litigation between petitioner and his sister or for recovery of the principal amount of advances involved in that litigation, but he concedes that deduction should be allowed of costs of recovery of interest and rental income in the litigation. We shall consider first whether petitioner is entitled to deduction under section 23(a)(2) for all or part of the expenses involved here. It is well established that a deduction is not allowable for legal fees and other expenditures for the recovery of capital. Helvering v. Stormfeltz, 142 Fed. (2d) 982; The Pennroad Corporation, 21 T.C. 1087, affd. 228 Fed. (2d) 329; Edmunds v. United States, 71 Fed. Supp. 29, E. J. Murray, supra.
Petitioner admits that his interest in the real estate had a fair market value of $15,000. [7] Unless petitioner can succeed under his alternative contention, set forth hereinafter, we would conclude here, as we did in the prior case, that petitioner *282 is entitled to deduction under section 23(a)(2) of such portion of the total expenditures, $3,145.64, as may be allocated to the recovery of income, mainly interest and rents. See Helvering v. Stormfeltz, supra; Agnes Pyne Coke, 17 T.C. 403, affd. 168 Fed. (2d) 787 [201 Fed. (2d) 742]; William A. Falls, 7 T.C. 66. Under this view, 27 per cent of the total expenditures or $850 is properly allocable as the ordinary and necessary expense incurred for the collection of income under section 23(a)(2). However, we pass decision of the point at this juncture and turn to petitioner's alternative argument, which is now his chief argument. In *283 Daniel S. W. Kelly, supra, reference was made to several authorities, including the decision of this Court in Virginia Hansen Vincent, 18 T.C. 339, which has since been reversed by the Court of Appeals for the Ninth Circuit. See Vincent v. Commissioner, 219 Fed. (2d) 228. The petitioner now relies upon the decision of the Court of Appeals in Vincent v. Commissioner, supra, for the proposition that the expenditures in question are deductible as a loss from theft under section 23(e)(3), 1939 Code. Petitioner argues that Ilma wrongfully converted properties belonging to petitioner, when she transferred title in real properties owned one-half by petitioner, through a "straw man", to herself and her husband as joint tenants, and appropriated the rents thereon. He contends that expenses incurred in recovery of these wrongfully converted properties constituted losses of property not connected with a trade or business, arising from theft, which are deductible under section 23(e)(3). We do not need to be concerned with the part of this argument which deals with the theory that petitioner's sister perpetrated a theft of rents, because as has *284 been indicated above, petitioner is entitled to a portion of the expenses which is allocable to interest on principal loaned and rents. We are concerned rather with the theory that petitioner's sister committed theft of his interest in the real estate. In Vincent v. Commissioner, supra, litigation expenses incurred in recovering shares of stock, dividends thereon, and interest, were held deductible as a loss arising from theft under section 23(e)(3), but that case is distinguishable from the case at bar. In the Vincent case, petitioner's father, Oscar, had been the owner of 5,000 shares of stock in the Bear Film Company. He transferred the shares to his mother, Josephine, in trust for himself. Upon Oscar's death intestate, in 1929, petitioner was his sole heir and thus entitled to receive the stock. However, Josephine concealed the existence of the trust and she transferred the stock to her son Albert. In an action commenced in 1940, petitioner recovered the 5,000 shares, having a value of $305,850, from persons to whom Albert had transferred and devised them, plus dividends from 1929 in the amount of $61,000 and interest of $63,082. *285 Her recovery was ultimately affirmed by the Supreme Court of California, in Hansen v. Bear Film Co., 28 Cal. 2d 154, 168 P. 2d 946, and she received the stock and money in 1946. She paid litigation expenses of $174,445.58 in 1946. In Virginia Hansen Vincent, supra, we allowed deduction of only a portion of the litigation expenses as an ordinary and necessary expense for the collection of income under section 23(a)(2). However, we refused to apply section 23(e)(3), as petitioner had contended, since we said that we could not impute to Josephine and Albert the commission of the crime of theft. The Court of Appeals reversed, on the ground that, as trustees of the stock for the benefit of the taxpayer, Josephine and Albert had embezzled the trust property. Vincent v. Commissioner, supra.The Court of Appeals said, at page 231: * * * Here the circumstance that the legal title was in Albert or Josephine as fiduciary was of great importance in the whole problem. The trust was an express trust. The embezzlement was a factor because the legal title was in the name of the fiduciary. But the California law defines such taking as 'theft.' It is found that *286 there was no basis for the so-called 'claim of right.' There was not in Josephine or Albert any 'color of title' such as it is denominated in real property law. Therefore, this type action does not fall within the idea of defending or perfecting title to property. There was never any question of the title to the property. When the circumstances of the trust and the appropriation of the property are taken into consideration, the application of this section of the statute is apparent. * * * In the Vincent case, the petitioner's recovery of property was clearly based upon a finding that she was the beneficiary of a trust of the property. In Hansen v. Bear Film Co., supra, the Supreme Court of California said, at page 958: * * * The evidence is susceptible of the inference that the terms of the express trust were precisely as found by the trial court, to wit: That Josephine was to hold the bare legal title in trust for Oscar, to be delivered and transferred back to Oscar at his request. Since Oscar did not demand a retransfer during his lifetime, it was the duty of Josephine, upon his death, to immediately convey title to all of the stock into his name or that of the representatives *287 of his estate. In other words, upon the death of Oscar, the express trust failed, and Josephine then held the trust estate upon a resulting trust for the estate of Oscar. * * * In contradistinction, petitioner's recovery of property in the instant case was based upon an estoppel and was not based on the existence of a trust of which he was beneficiary and his sister trustee, as contended by petitioner. In Kelly v. Gram, supra the Supreme Court of South Dakota specifically negated the existence of a trust. It said, at page 465: * * * if the trial court found that defendant promised her father that she would convey to her brother, a constructive trust would necessarily have been decreed. However, the trial court chose to believe that defendant did not make such a promise and we cannot say that such finding is against the clear preponderance of the evidence. * * * Since petitioner's sister was not a trustee of property for his benefit, there is no basis for concluding that she was guilty of embezzling trust property, as was done in *288 Vincent v. Commissioner, supra. It follows that the Vincent case is not controlling here, and that petitioner's litigation expenses are not lesses arising from theft under section 23(e)(3). It is held, and has been found, that petitioner's expenditures in the amount of $850 were expenditures made to recover rental and interest income. This amount is deductible under section 23(a). Cohan v. Commissioner, 39 Fed. (2d) 540. The total deduction claimed amounts to $3,145.64. The sum of $2,295.64 represents expenditures for the recovery of capital which must be capitalized; such amount is not deductible. Respondent's determination is sustained to the extent of $2,295.64. Helvering v. Stormfeltz, supra; Cohan v. Commissioner, supra. It is observed that petitioner's argument for deduction of his litigation expenses under section 23(e)(3) is inconsistent with his contention under the second issue, that he and his sister were engaged in a joint venture in operating the properties involved in the litigation. Section 23(e)(3) applies to property not connected with a trade or business, but if the property had been operated as a joint venture, *289 it would be property connected with a trade or business. Issue 4. Addition under Section 294(d)(2). Under the provisions of sections 58(a) and 59(a) of the Internal Revenue Code of 1939, the petitioners were required to, and they did, file a declaration of estimated tax. The income tax return filed by petitioners on January 15, 1951, was considered by them to be an amendment to the declaration pursuant to section 58(d)(3)(B) of the Internal Revenue Code of 1939, and the respondent agrees to that treatment. On their return filed January 15, 1951, the petitioners showed a total tax of $5,527.28. Respondent determined that petitioners' correct tax liability was $7,643.94. Section 294(d)(2) of the Internal Revenue Code of 1939 provides that if 80 per cent of the correct tax exceeds the estimated tax, there shall be added to the tax an amount computed in accordance with that section. The imposition of the section 294(d)(2) penalty is mandatory where a taxpayer substantially underestimates his tax. *290 H. R. Smith, 20 T.C. 663. Accordingly, it is held that, if upon recomputation of the tax under Rule 50 in accordance with this opinion and in accordance with concessions made by the parties, 80 per cent of the correct tax exceeds the estimated tax shown in the amended declaration, the return filed on January 15, 1951, petitioner is subject to penalty under section 294(d)(2), and effect shall be given to this holding by the parties in their Rule 50 recomputation. Respondent concedes on brief that he incorrectly computed the amount of the addition under section 294(d)(2) in the notice of deficiency. The amount of the addition under section 294(d)(2), if any, of course, will be recomputed under Rule 50. Decision will be entered under Rule 50. Footnotes
1. SEC. 3797. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * *
(2) Partnership and Partner. - The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. * * * ↩
2. SEC. 182. TAX OF PARTNERS. In computing the net income of each partner, he shall include, whether or not distribution is made to him - * * *
(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b)↩.
3. 51.0212. Joint tenancy. A joint interest is one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants. Source: § 269 Rev. Code 1919. 51.0213. Partnership. A partnership interest is one owned by several persons, in partnership, for partnership purposes. Source: § 270 Rev. Code 1919.
51.0214. Tenancy in common: definition. An interest in common is one owned by several persons not in joint ownership or partnership. Every interest created in favor of several persons in their own right is an interest in common, unless acquired by them in partnership, for partnership purposes, or unless declared in its creation to be a joint interest, as provided in the section defining joint interest. Source: §§ 271 and 272 Rev. Code 1919, combined to unite related subject matter.↩
4. SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED. (a) General Rule. - The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. In the case of the death of a taxpayer whose net income is computed upon the basis of the accrual method of accounting, amounts (except amounts includible in computing a partner's net income under section 182) accrued only by reason of the death of the taxpayer shall not be included in computing net income for the period in which falls the date of the taxpayer's death. * * *↩
5. Bulletin "F" suggests the following depreciation rates as a guide: ↩
Rate (per cent)
Good
Average
Cheap
Office Buildings
2
2 1/2
3
Stores
2
2 1/2
3
6. It should be pointed out that in the prior case, Daniel S. W. Kelly, supra↩, the facts refer to the same items recovered from the petitioner's sister, i.e., property of the value of $15,000, and cash in the amount of $11,129.57, of which $3,059.77 represented loan principal, $4,514.34 interest on the loan principal, $2,993.91 rental income during the period, and $561.55 recovery of court costs. In the instant case, the identical settlement receipts are involved. Respondent has interpreted the court's allocation of $600 as deductible expense to represent 27 per cent of the total value of the petitioner's recovery. He has applied 27 per cent to the total expenses involved in this case, $3,145.64, thereby arriving at $850. Although the court did not explain how it arrived at an allocation of $600 in the earlier case, it is evident that the court excluded from $27,129.57, court costs of $561.55, the recovery of loan principal, $3,059.77, and the value of the interest in the real estate, $15,000, or $18,621.32, leaving $7,508.25, the amounts of interest and rent recovered. This sum, $7,508.25, is 29 per cent of the costs recovered not including court costs, $25,568.02.
7. The parties, under their stipulation, have introduced into the record in this proceeding, the entire record and the Findings of Fact and Opinion of this Court in the earlier case. There it was found that (p. 685) the interest of petitioner in the real estate had a fair market value of $15,000. Also, it has been stipulated here that the petitioner's interest had a value of $15,000.↩